Holladay *v.* Frisbie.

---

## HOLLADAY *v.* FRISBIE.

THE proviso in the Act of March 26th, 1851, granting certain beach and water lot property in San Francisco to the city, that the city shall pay into the State treasury, within twenty days after their receipt, twenty-five per cent. of all moneys arising in any way from the sale or other disposition of the property, is not a condition, either precedent or subsequent, annexed to the grant.

Nor does the proviso create a trust in the city in favor of the State, so far as the property itself is concerned; that is to say, the estate granted is not, by force of the proviso, held in trust partly for the benefit of the State. The interest of the city in the property is a legal estate for ninety-nine years. When the property is once sold or disposed of by the city, it is not charged with the payment of the percentage in the hands of the grantee or purchaser. That is a duty devolving on the city, with which the grantee or purchaser has no concern.

If there be any trust created by the proviso, it is only a trust in the one-fourth of the proceeds which the city may receive, amounting only to a covenant on the part of the city, which in no wise qualifies the grant or affects the legal estate of the city in the premises.

The beach and water lot property mentioned in the act is not devoted by the grant of the State to any specific public purposes, or made subject to the performance of any trusts by the city. The interest of the city is absolute, qualified by no conditions and subject to no specific uses. It is a leviable interest, subject to sale under execution.

The proviso to the act operates only as a covenant on the part of the city, that if she make any sale or other disposition of the property, and realize from such sale or other disposition any moneys, twenty-five per cent. of the same shall be

paid into the State treasury. On the other hand, if the property be disposed of without the receipt of any moneys by the city, no obligation arises in favor of the State.

*Smith* v. *Morse*, (2 Cal. 524) deciding that the city's interest in this beach and water lot property can be sold on execution against the city, not to be disturbed; but any rights which " the Commissioners of the Funded Debt of the city of San Francisco," under the Act of May 1st, 1851, may possess in this property, are not passed on.

Whatever interest the city of San Francisco, as defined by the charter of 1851, had in her beach and water lot property, on the first day of January, 1855, was transferred to and vested in the parties who were in the actual possession thereof on that day—provided their possession was continued up to June 20th, 1855, or if interrupted by an intruder or trespasser, had been or might be recovered by legal process—by virtue of the Van Ness Ordinance and the Act of March 11th, 1858, ratifying and confirming the same; and such parties can defeat the claim of plaintiff who holds under a conveyance by the President and two members of the Board of Land Commissioners, created by Act of May 18th, 1853, providing for the sale of the State's interest in the property within the water line front, as defined by the Act of March 26th, 1851.

The interest of plaintiff derived from a conveyance of the Commissioners under the Act of May 18th, 1853, is only to the reversion after the ninety-nine years designated in the Act of March 26th, 1851.

APPEAL from the Twelfth District.

The facts of the case sufficiently appear in the opinion of the Court. Defendant had judgment below; plaintiff appeals.

*Holladay & Cary*, for Appellant.

For the purposes of this case, we shall assume without argument that if the defendant has any title, it is to be found in his Sheriff's deed, based upon the Act of March 26th, 1851, which purports to convey an interest in this property to the city.

We shall also assume that the title passed, either under the water lot bill of March 26th, 1851, or else under and by the deed from the Commissioners to the plaintiff; and in either case it leaves no title upon which the Van Ness Ordinance can operate. This brings us to the consideration of the first and only serious ground of defense interposed by the defendant, namely: his Sheriff's deed under an execution against the city of San Francisco, dated October, 1851.

I.   The Act of March 26th, 1851, does not convey absolutely any interest in the land to the city, such as is liable to execution.

II.   The act conveys none but the surveyed " lots " to the city.

Holladay *v.* Frisbie.

The grant of these "lots" to the city is obviously one of trust, which the city takes subject to the right of the State to one quarter of all "moneys" arising in any way from the sale of the property, etc.

The State was dealing with the city, and her alone, and it was from the city only that the State could look for any money arising from the sale of the land.

In vain would the State look to an embarrassed creditor, whom the Sheriff had first plucked by execution.

This act is a grant by the State, and as such must be construed strictly. It needs no authority in support of this elementary proposition ; therefore nothing passed except in strict conformity with its terms.

*McDougall & Sharp,* for Respondent.

I.   The Act of March 26th, 1851, is a simple grant to the city for ninety-nine years, without limitation or condition. The provision for payment of a percentage is only a covenant, not a condition. (Lord Cromwell's Case, Coke's Rep. part 2, 70, vol. 1, 617 ; *Clapham* v. *Moyle,* 1 Levinz, 155.)

II.   The city's interest was subject to sale on execution. (*Welsh* v. *Sullivan,* 8 Cal. 187 ; *McKeon* v. *Bisbee,* 9 Id. 142.)

III.   Defendant, being in possession January 1, 1855, and continuing in possession ever since, received all the interest the city had, by virtue of the Van Ness Ordinance of 1855, and the Act of 1858 confirming the same.

*F. M. Haight,* also for Respondent, argued that the Act of March 26th, 1851, did not create a trust in favor of the State, and that the Van Ness Ordinance passed to defendant whatever interest the city held.

FIELD, C. J. delivered the opinion of the Court—BALDWIN, J. concurring.

This is an action of ejectment to recover possession of certain premises situated within the city of San Francisco. The premises constitute a portion of the property known as the beach and water lot property, granted to the city by the Act of March 26th, 1851. The case is presented upon an agreed statement of facts, and appears to be an amica-

ble suit for the purpose of determining the respective rights of the parties.

The plaintiff claims title to the premises by virtue of a conveyance executed to him by the President and two members of the Board of Land Commissioners created by the Act of May 18, 1853, providing for the sale of the interest of the State in the property within the water line front, as defined by the Act of March 26, 1851. The conveyance bears date of the twenty-third of April, 1853, and it is admitted that whatever right, title or interest the State possessed in the premises at that date, passed by the conveyance to the plaintiff. (Laws of 1853, chap. 160, secs. 6 and 8.)

The defendant claims title to the premises, first—by virtue of a grant from a Justice of the Peace of the city of San Francisco, bearing date on the nineteenth of December, 1849, and the Act of the Legislature of May 1st, 1851, confirmatory thereof; second—by virtue of a conveyance from the Sheriff of the county of San Francisco, bearing date on the twenty-third of October, 1851, executed upon a purchase of the premises at a sale under a judgment and execution against the city; and, third—by virtue of the ordinance of the Common Council of the city of San Francisco, for the settlement and quieting of land titles in the city, passed on the twentieth of June, 1855, commonly known as the Van Ness Ordinance, and the Act of the Legislature of March 11, 1858, confirmatory thereof, he being in possession of the premises on the first of January, 1855.

We shall pass over the defendant's first alleged source of title without consideration, as there is no evidence before us that the city ever complied with the conditions upon which the right of the State to the beach and water lot property was to be relinquished by the Act of May 1, 1851, and it is unnecessary, for the determination of the present case, to express any opinion upon the question whether the clause in the act, confirmatory of the grants made by any Justice of the Peace of the city, is independent of these conditions, and operative without reference to their performance. Whatever may be the effect of the clause referred to, its provisions could not, of course, divest the leasehold interest previously passed to the city.

By the Act of March 26, 1851, a grant is made to the city of the use and occupation of the beach and water lots therein described, with certain specified exceptions, for the period of ninety-nine years, with a proviso that the city shall pay into the State Treasury, within twenty

41

days after their receipt, twenty-five per cent. of all moneys arising in any way from the sale or other disposition of the property. There has been much discussion as to this proviso and its effect upon the estate granted. It has been regarded by some members of the profession as a condition annexed to the grant, and by others as creating a trust in the city in favor of the State. The plaintiff takes the latter position, and as a consequence flowing from it, that the interest which passed to the city was not subject to sale under execution.

The proviso is in no sense a condition annexed to the grant, either precedent or subsequent. It is not, of course, a condition precedent, for its requirement presupposes the estate *to have vested,* and the right to sell or otherwise dispose of the same to have been exercised. It is not a condition subsequent, for the non-performance of which the estate can be defeated, for by its terms the right of the State to the percentage, and the obligation of the city to pay the same, can only arise *after* the city has parted with the estate and received the consideration.

Nor does the proviso create a trust in the city in favor of the State, so far as the property itself is concerned; that is to say, the estate granted is not, by force of the proviso, held in trust partly for the benefit of the State. If there be a trust, it is, of course, an express one, of which grantees and purchasers will be deemed to have notice, and in cases of this kind the rule is settled that the interest of the *cestui que trust* cannot be defeated. It is an interest in the property distinct, it is true, from the legal ownership, but one which can be enforced in equity. It accompanies the property in all its changes and transfers until the trust is executed. The trust asserted is to pay over a certain portion of the proceeds. If this provision does in fact create a trust, so far as the property itself is concerned, in favor of the State, then the property is charged with the payment of the percentage in the hands of the purchaser. Yet it will not be pretended that the premises, when once sold or disposed of by the city, remain thus charged. It is not for the grantee or purchaser to see to the payment of the percentage to the State. That is a duty devolving upon the city, with the performance of which the grantee or purchaser has no concern. There is no such interest in the property remaining in the State, as the existence of the supposed trust would necessarily imply. The possession of *any* interest in the property is negatived by the express terms of the grant; which terms are absolute, conferring the unconditional right

to the use and occupation for ninety-nine years. The interest which the State reserved is to a portion of the proceeds arising upon the sale or other disposition of the property, if any proceeds were received by the city. To a portion of such proceeds alone could the State ever assert any claim. The obligation rests upon the city to pay over the per centage, and that is all. If there be any trust, then, created by the proviso, it is only a trust in the one-fourth of the proceeds which the city may receive, amounting, in fact, only to a covenant on the part of the city, which in no wise qualifies the grant or affects the legal estate of the city in the premises.

"Words of proviso and condition," says Parsons, "will be construed into words of covenant, when such is the apparent intention and meaning of the parties." (Law of Contracts, 2 vol. 23.) In *Clapham* v. *Moyle* (1 Levinz, 155) a proviso to pay was held to be a covenant. Clapham conveyed an office to Moyle, *provided* that Moyle should pay to Clapham five hundred pounds out of the first profits of the office. The action was brought in debt for the five hundred pounds, the plaintiff alleging the conveyance of the office, the receipt by the defendant of the amount out of the profits, and its non-payment. The defendant demurred, but the Court adjudged that the action was properly brought on the proviso ; "for this proviso is not by way of condition or defeasance, but by way of agreement to pay the five hundred pounds."

The interest of the city in the beach and water lot property, is a legal estate for ninety-nine years. The property is not devoted by the grant of the State to any specific public purposes, or made subject to the performance of any trusts by the city. It is held by a very different tenure from that by which the city holds the lands of the old pueblo, and which was the subject of elaborate consideration in *Hart* v. *Burnett et al.*, recently decided. Those lands were given upon express trusts, and are now held, if not upon precisely the same trusts, yet upon trusts equally effectual to protect them from forced sale under execution. As to the beach and water lot property, the case is different. In that property the interest of the city is absolute, qualified by no conditions and subject to no specific uses. It is therefore a leviable interest, subject to sale under execution, and such interest in the premises in controversy passed to the defendant upon the sale and conveyance, under his judgment and execution.

The objection, that if the sale of the city's interest under execution be sustained, the proviso in the legislative grant will be entirely

defeated, is without force.  In *Smith* v. *Morse* (2 Cal. 524) a portion of the property in controversy consisted of a water lot, covered by the grant of March 26th, 1851, and whilst it was admitted that the title to the lot was in the city, so far as the right to sell the prorerty was concerned, it was insisted by counsel, as appears from their briefs on file, (not published in the report of the case) that the interests of the city was not liable to sale under execution, as such sale would defeat the proviso ; but the Court answered that " the city is estopped from setting up any right in the State ; " and that " the Sheriff merely sold the right, title and interest of the city.  And when the State chooses to assert her right in the premises, it will be time enough for this Court to determine the character of the title which the plaintiff acquired." We do not, however, meet the objection in this way, but rest the answer to it upon the language of the proviso itself.  The proviso does not indicate the manner or time in which the property shall be disposed of, nor require that any sale or other disposition shall be made at all.  The city may have retained the whole property, or have leased it for the full term upon the condition of improvement, or parted with its interest in a variety of other ways, without the receipt therefrom of any moneys of which the State could have claimed a portion.  The proviso operates, in fact, only as a covenant on the part of the city, that if she makes any sale or other disposition of the property, and realizes from such sale or other disposition any moneys, twenty-five per cent. of the same shall be paid into the State Treasury.  On the other hand, if the property be disposed of without the receipt of any moneys by the city, no obligation arises in favor of the State.  Any other construction is not required by the language or purposes of the act, and would be accompanied with insurmountable difficulties.  The legal estate being vested in the city—not qualified or affected by her covenant—was subject, as we have already stated, to sale under execution ; and if by reason of such sale a voluntary disposition by the city and consequent receipt of moneys, of which the State could have claimed a portion, became impossible, it was a result against which the language of the proviso does not protect the State, and she cannot complain.

Perhaps the percentage upon the sum for which the property sold under execution might have been claimed by the State, considering the application of such sum to pay the debt of the city as amounting virtually to a receipt of the same by the city.  It is unnecessary to express any opinion upon the point, and we only allude to it because it is

admitted in the present case that an amount equal to the percentage of the sum for which the premises in controversy were sold, was actually paid by the city to the State, though not until the year 1853.

But were we less clear than we are, as to the liability of the city in the beach and water lot property to sale under execution, we should not depart from the decision made in *Smith* v. *Morse*, which expressly asserts the right of a judgment creditor to subject this interest to sale, after full and elaborate argument upon the point. Upon the faith of that decision improvements have been made by the purchasers, or parties claiming under them, to the value of millions, and by no act of ours will the title of such purchasers and parties ever be disturbed. It is true, that the case of *Smith* v. *Morse* was a controversy between a purchaser at Sheriff's sale and the Commissioners under the Act of May 1st, 1851—authorizing the funding of the floating debt of the city—the latter claiming that the interest of the city had passed to them by a conveyance from the Commissioners of the Sinking Fund. Our decision, therefore, in the present case, is made without reference to any rights which those Commissioners may possess. They are not parties to this suit, and their rights are not involved, and it would, therefore, be improper to express or intimate any opinion in relation to them.

But independent of all considerations of the title derived from the sale and conveyance of the Sheriff, the defendant can successfully resist a recovery by the plaintiff by force of the title vested in him under the Van Ness Ordinance. That ordinance was passed by the Common Council of the city on the twentieth of June, 1855, and was ratified and confirmed by the same body by an ordinance passed on the twenty-seventh of September, 1855. On the eleventh of March, 1858, these ordinances were ratified and confirmed by an Act of the Legislature. The first section of the ordinance appears to have been framed upon the supposition that the land within the corporate limits of the city, as defined by the charter of 1851, above the natural high water mark of the bay of San Francisco, might have been public property of the General Government, and provides for an entry of the same at the proper land office of the United States. The second section of the ordinance, however, is of a very different character. That section embraces all the lands within those corporate limits, including the beach and water-lot property, and was framed upon the supposition that the city possessed some title or interest in them, and by its provis-

ions she relinquishes and grants all her title and claim thereto, with certain exceptions, to the parties in the *actual possession* thereof, by themselves or tenants, on or before the first of January, 1855, provided such possession was continued up to the time of the introduction of the ordinance in the Common Council; or if interrupted by an intruder or trespasser, had been or might be recovered by legal process. The ordinance then proceeds to designate certain parties who shall be deemed to have been in possession. It is unnecessary to specify the parties thus designated, as the designation has no bearing upon the position of the defendant. It is admitted that he was in the possession of the premises in controversy on the first of January, 1855, and has continued in such possession ever since. If, therefore, the city held at that date any interest in the premises, such interest was transferred to and vested in the defendant, by the operation of this ordinance and the legislative confirmation thereof. Whatever question may be raised as to the liability of her interest to forced sale, there can be none as to the validity and effect of her voluntary grant of the same, after such grant has received the approval and ratification of the Legislature.

The interest of the plaintiff in the premises, derived from the conveyance of the Commissioners under the Act of May 18, 1858, is only to the reversion after the ninety-nine years designated in the Act of March 26, 1851.

Judgment affirmed.

COPE, J.—I concur in the judgment of affirmance, and in the opinion of the Chief Justice, except that I do not draw any distinction between the leviable character of the beach and water lot property and the lands of the old pueblo, being, in this respect, governed by previous decisions of the Court.