## Commonwealth of Kentucky, for use, etc., et al v. Mengel Box Co.

(Decided February 18, 1913.)

### Appeal from Jefferson Circuit Court.
(Chancery Branch, Second Division.)

1. Escheat—Constitutional Provision—Construction of.—The purpose of section 192 of the constitution, inhibiting corporations from holding real estate, not necessary for carrying on their business, is to prevent corporations from buying up large and valuable tracts of land, not for any use connected with their business but for speculative purposes or for the purpose of removing minerals and timber thereon from the market for the time being.

2. Escheat—Property Subject to—Corporations—Lands—Right to Hold.—A corporation may take title to, and hold for a period longer than five years, real estate, without the same being subject to escheat, if such holding is for a proper, legitimate, and necessary use of the corporation in the conduct of its business, although such use may not be actually exercised within five years after the acquisition of the property.

LAWRENCE S. POSTON, JAMES C. POSTON, WALLACE A. McKAY, for appellants.

HUMPHREY, MIDDLETON & HUMPHREY, for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This is an appeal from a judgment of the Jefferson circuit court dismissing a petition, wherein the Commonwealth, for the use and benefit of the School Board of the city of Louisville, sought to escheat a small parcel of real estate on Twelfth street near its intersection with Kentucky street, fronting 22 1-2 feet on Twelfth street and running back a uniform width, for a distance of 99 feet, to an alley. It is alleged in the petition that this property was owned by the Mengel Box Company, a corporation; that it was not used or needed by said corporation in the prosecution of its business; that it had been held by said company, for more than five years

next before the institution of the suit; and plaintiffs asked that said property be escheated to the Commonwealth, and that the title thereto vest in the Louisville School Board for the benefit of the public schools of the city of Louisville. The defendant admitted the ownership of the property; that it had been held for more than five years next before the institution of the suit; but denied that it was not needed by it in the proper and legitimate conduct of its business, although said property was not, at the time, nor had it as yet been, subjected to any use by said corporation. The accompanying map shows the location of the property sought to be escheated, and its relation to the remaining property owned by said corporation and claimed to be necessary to its use, in the proper conduct of its business.

Garland avenue is a public street, lying north of Kentucky street; Twelfth street lies to the west; and Eleventh street to the east. In 1899, the Mengel Box Company acquired practically all of the property in the two blocks lying between Eleventh and Twelfth streets, and bounded, on the north by Garland avenue and on the south by a public street, which we will call "X." The name of this street is not given in the record, but it is admitted that it is a public street. Either just before or shortly after, they acquired this property, there was run a twelve foot alley between Garland avenue and Kentucky street, 99 feet east of the Twelfth street line, thus cutting off from the remainder of their property a strip of land, 99 feet in width, extending from Garland avenue on the north to Kentucky street on the south. This was cut up into lots, and all, except the lot next to the corner lot on Kentucky street, were sold to different owners. This corner lot is 25 feet in width. So, the company owns the strip of ground, 22 1-2 feet in width, indicated on the accompanying map by the black surface. The property, lying north of Kentucky street, is used for yardage purposes, while on that, south of Kentucky street, stand the company's mill and machinery buildings, etc.

It appears that, fifteen or twenty years ago, the Louisville & Nashville Railroad Company made an effort to build a viaduct over Kentucky street, in order to avoid a grade crossing. This effort was carried to the extent of instituting suits to condemn property along Kentucky street for that purpose, but, for some reason not dis-

closed by the record, the project was, at that time, abandoned; it is intimated, in a deposition given by C. C. Mengel, that it was abandoned because the Railroad company, which was the only party really interested in the construction of a viaduct, was unwilling to go to the expense which, the investigation disclosed, would have to be incurred in order to acquire the necessary property. It is shown that the idea of requiring or causing a viaduct to be built over Kentucky street, between Eleventh and Twelfth streets, while it has lain dormant for a number of years, has not been abandoned. It also appears that it is because of this fact, viz: the agitation of the building of a viaduct, that the appellee, company, has held the lot in question. It is shown that, if this viaduct should be built over Kentucky street, it would cut off entirely the communication between the property north of Kentucky street and that south of it, and appellee, in passing from its lumber yard to its mill property, would have either to go out on to Eleventh street and down that street to its property; or else, go north to Garland avenue, and then either to the west to Twelfth street and down Twelfth, or east to Eleventh street and down it; whereas, if it retained the lot in question, upon which there is an ordinary dwelling, the dwelling could be removed and it would have a comparatively easy way of access from its property north of Kentucky street to its property on the south side thereof; and it is for this purpose, coupled with the further idea that the more property it held on Kentucky street the better able it would be to prevent the building of the viaduct, that the appellee company has held this lot.

There can be no question that, if the viaduct is built, this way of passing, from its property north of Kentucky street out on to Twelfth street and from there into its property south of Kentucky street, would be most convenient to appellee, indeed, most essential to it in the proper and economic conduct of its business. Mr. C. C. Mengel testifies that it would be very convenient and "almost necessary," and it is insisted, by counsel for appellants, that the statement of Mr. Mengel to the effect that this outlet from his property would be "almost necessary" is an admission that it is not necessary; but, from the deposition of Mr. Mengel taken as a whole, it is apparent that he used the word "necessary" in the sense of "essential," and it takes but a casual inspec-

tion of the property, the relation of one piece of the property to the other, to understand that, when he said that it was "almost necessary," he meant "almost essential." Indeed, to our mind, his company was exercising a wise foresight when it determined not to sell this property and to hold it to meet the very contingency that might, and in all probability will, happen. It was certainly not the intention of the delegates, in framing the constitutional provision relied upon, nor of the members of the legislature, in enacting the statute cited to carry out this provision, that corporations should be dealt with in a narrow or niggardly manner; or that they should be deprived of the right to look into the future and provide for a safe, expeditious and economic conduct of their business; but, on the other hand, their purpose was to prevent railroads or other corporations from buying up large and valuable tracts of land, not for any use connected with their business, but for speculative purposes, or for the purpose of removing the minerals or timber on such lands from the market, for the time being at least. It was abuses of this character that the makers of the constitution and the legislature were aiming to prevent. Although a corporation takes title to property and holds it for a longer period than five years, such property is not subject to escheat, unless the corporation is unable to show that it is needed for future use in the proper, fair, and legitimate conduct of its business. Cases will necessarily arise, where it cannot be definitely determined whether the property will or will not be necessary for the corporate use; but, if it appears, with reasonable certainty, that it will be, and in the happening of a contingency like that here sought to be provided against would be, needed by such corporation in its business, the court would not hesitate to declare the holding to be for a future use, and hence, justified, and, in no wise, violative of the constitutional provision relied upon.

In German Insurance Co. v. Commonwealth, 141 Ky., 606, and Louisville Property Co. v. Commonwealth, 146 Ky., 827, the right of a corporation to hold lands for a longer period than five years, without their being subject to escheat, when it is shown that such holding was for the future use of such corporation, in the legitimate conduct of its business, was upheld. The necessity and wisdom for such holding are fully discussed in the for-

mer of said cases, and it is unnecessary to enter into a consideration of the question here, further than to say that we adhere to the principles therein announced and hold that, when it is made to appear that realty is held by a corporation for a proper, legitimate, and necessary use in the conduct of its business, it is not subject to escheat, although it may further appear that such use will not be actually exercised within five years from the date upon which the property was acquired. So long as it is reasonably certain that it will be necessary for such use, the property is not subject to escheat.

Measured by this standard, the finding of the chancellor in the case at bar is undoubtedly correct. For, according to the evidence, there is more than a possibility that the viaduct will be built; and, if it is built, the property, in question, as a passway from one part of its plant to the other, will be almost indispensably necessary to appellee. The good faith of appellee, in holding this property, is best illustrated by its conduct at a time when its right to so hold it was not called in question. It sold off the lot between the lot in question and Kentucky street, and in the deed, reserved the right to repurchase said property should it be needed by appellee. It is in evidence that it has offered to sell the lot in question upon the same terms. No such provision was inserted, so far as the record shows, in any of the deeds to the lots, between this lot and Garland avenue, that was sold. Appellee's plant is quite valuable; worth perhaps several hundred thousand dollars. Its owners are naturally vitally interested in the question of the building of a viaduct through Kentucky street, for such a structure would cut their plant entirely in two. Without this lot, to be used as a passway, they would be compelled to adopt one or the other of the circuitous routes above described, in passing from their mill property to their lumber yards. With it, they have a ready outlet from the one to the other. Appellee cannot be denied the right thus to protect itself by providing against such a contingency, and its conduct, in so doing, cannot be construed as a violation of section 192 of the constitution.

Judgment affirmed.