# Board of Councilmen of City of Frankfort v. White.

(Decided May 18, 1928.)

## Appeal from Franklin Circuit Court.

1. Municipal Corporations.—The acts, undertakings, and engagements of municipal corporations are those in furtherance of strictly governmental powers, conferred or delegated expressly or by necessary implication by their charters, those which they may or may not exercise under their charters in carrying out strictly local municipal ventures, and those which they sometimes perform in strictly private capacity.

2. Municipal Corporations.—The governmental functions, which a municipal corporation may exercise consist of such portions of strictly governmental duties as Legislature representing state may see proper to delegate.

3. Municipal Corporations.—The undertakings in which a municipal corporation may engage in carrying out strictly local municipal ventures are those appertaining exclusively to provisions for local benefits to and convenience, comfort, and welfare of its inhabitants.

4. Municipal Corporations.—Generally, undertakings of municipal corporations in private capacity exclusively are ultra vires, and cannot be provided for with funds collected for public purposes.

5. Municipal Corporations.—Municipality, in performance of its strictly governmental functions, may acquire and hold such property, real or personal, as may be appropriate and necessary in discharge of such functions, including necessary buildings and structures for housing of municipal officers and storing and preservation of personal property acquired and owned in discharge of such functions.

6. Municipal Corporations.—Property of municipality, acquired in and necessary to discharge of strictly local municipal purposes under authority of municipal charter, is held for a public purpose, and hence exempt from appropriation to satisfaction of municipality's debts, as well as from taxation.

7. Municipal Corporations.—All property of municipal corporation, acquired for and devoted to any of public uses, for accomplishment of which it may levy and collect taxes, and included in either its governmental functions or strictly local municipal ventures, is exempt from levy and sale under execution in satisfaction of municipality's debts, but strictly private property of such corporation may be appropriated by judicial process for such purpose.

8. Municipal Corporations.—House and lot, long since acquired by city in its strictly governmental capacity and now being used for storage of tools and implements necessary in maintaining and repairing public streets, held not subject to seizure and sale for satisfaction of judgment against city.

9.  Municipal Corporations.—Proceeds from rental of opera house for
which space in city building not required for city offices and legis-
lative hall, for which building was erected, was inclosed and equip-
ped so as to reap income until necessary to occupy it in discharge
of municipal functions, held not subject to seizure for satisfaction
of judgment against city.

F. M. DAILEY for appellant.

LESLIE MORRIS for appellee.

Opinion of the Court by Judge Thomas—Reversing
in part and affirming in part.

Appellee and plaintiff below, R. E. White, recovered
in the Franklin circuit court a judgment against appel-
lant and defendant below, board of councilmen of the city
of Frankfort, for the sum of $500 and costs.  It was not
paid, and this equity action in the nature of a bill of dis-
covery was instituted by plaintiff in the same court to
subject certain property of the defendant in the judg-
ment, which plaintiff claimed was not held by it in its
governmental capacity, nor was it necessary to be so held
to enable it to perform any permissible public functions
as a municipality. One of the items of property so sought
to be subjected was a small house and lot owned by the
city, and which it used as a store house for its tools and
implements employed in the maintenance of its streets
and for the discharge of other public duties.  The second
item of property sought to be appropriated to the pay-
ment of the judgment was rent due from the Frankfort
Amusement Company, to defendant in the execution, as
lessee of the Capital Theater, a structure owned by the
city and rented by it to the amusement company, which
was served with garnishee process in the bill of discov-
ery action. The trial court subjected to the payment of
the judgment the rent due by the amusement company,
but declined to subject the toolhouse or the lot upon
which it stood, and, complaining of that judgment, the
board of councilmen prosecute this appeal.  Plaintiff has
prayed and obtained a cross-appeal in this court where-
by he seeks a reversal of so much of the judgment as de-
clined to subject the toolhouse.  The question presented
therefore is: Whether any of the property involved,
being owned by a municipal corporation, may be seques-
tered by usual judicial processes employed in satisfaction

of judgments in the manner attempted by plaintiff in this case?

The acts, undertakings, and engagements of municipal corporations are universally conceded to be: (1) Those in furtherance of strictly governmental powers conferred or delegated either expressly or by necessary implication by their charters; (2) those which it may or may not exercise under authority from its charter in carrying out its strictly local municipal ventures; and (3) those which it sometimes performs in a *strictly private* capacity. The governmental functions which it may exercise under class (1) consists of such portions of strictly governmental duties as the Legislature representing the state may see proper to delegate to it. The undertakings in which it may engage under classification (2) are those appertaining exclusively to the providing for local benefits to its inhabitants, and for their convenience, comfort, and welfare; and all other undertakings or acts of the municipality not coming within classifications (1) and (2) are necessarily listed in classification (3). In making such classification we would not be understood as thereby determining that it was competent or lawful for the municipality to embark in any of the undertakings coming exclusively within classification (3), since most generally, if not always, they are ultra vires, and, unless the delegated authority is sufficiently broad to include the acts covered by the first two classifications it would seem not to be lawful for it to provide them with its funds collected for public purposes. Hence the opinions of courts of last resort, and contents of text-books based thereon, will be found on examination to be in apparent and hopeless conflict as to what particular func tions a municipality may rightfully exercise or in what engagements it may undertake and provide for with public funds, and which conflict grows out of the fact of wide and multiplied differences between the powers conferred by the particular charter under consideration.

Such differences may exist in the same sovereignty, as was true in this commonwealth until the adoption of our present Constitution, which required the classification of municipalities and that each one of the same class should be governed by the same charter. Even now, under such requirement, the charter enacted for one class of municipalities might be, and in fact is, widely different with respect to delegated powers from that enacted

for another class. Before the requirement of classification of cities and their operation under the same charter for each class the municipality was chartered by a special act of the Legislature, and two of them rarely ever imposed the same delegated duties, nor was there conferred upon them the same municipal powers. Therefore an opinion dealing with the powers and authority of a particular municipality would necessarly not be a precedent, unless the same or substantially the same delegation was made in each charter.

Notwithstanding such conditions it is everywhere adjudged that a municipality may in the performance of its strictly governmental functions, included in classification (1), acquire and hold such property, real or personal, as may be appropriate and necessary in the discharge of such functions, and which includes necessary buildings and structures for the housing of municipal officers and for the storing and preservation of whatever personal property that it may acquire and own in the discharge of such functions. The cases and text authorities also hold that whenever the charter is sufficiently comprehensive to authorize and permit the acquisition of property by the municipality in the carrying out of the functions included in classification (2), it is competent and lawful for it to do so with funds raised by taxation, and when so acquired such property as well as that acquired in the exercise of powers within classification (1) is held for public purposes under the provisions of section 171 of our Constitution, prescribing that "taxes shall be levied and collected for public purposes only," and which is upon the theory that any action undertaken and accomplished for any of the purposes in classification (2) is for a public purpose the same as if it was for a strictly governmental purpose undertaken and performed in execution of the powers included in classification (1).

Illustrations of a *strictly municipal* purpose, as distinguished from a *governmental* purpose, are the construction and operation of municipal waterworks, and the providing for the lighting of streets and, incidentally, the furnishing of lights to private individuals, and also provisions for the sprinkling of streets for sanitary purposes. Many others could be mentioned, but which we deem unnecessary to do. As an illustration of the conflict in opinions to which we have hereinbefore referred

we may cite the case of City of Louisville v. Common-
wealth, 1 Duv. 295, 85 Am. Dec. 624, in which it was held
by this court that under the then prevailing provisions
of law for the exemption of property from taxation, all
property held by the city of Louisville and not "neces-
sary or useful to the administration of the government
and devoted to that use" was subject to assessment for
state taxation, and which included property that was so
liable to be taxed, "market houses, fire engines, and the
like."

In the later case of City of Owensboro v. Common-
wealth, 105 Ky. 344, 49 S. W. 320, 20 Ky. Law Rep. 1281,
44 L. R. A. 202, the conclusion reached in the Duvall case
was criticized and in effect overruled, and which was
principally upon the theory that the charter of the city
of Owensboro, under consideration in the later case
authorized the city to acquire the fire extinguishing prop-
erty sought to be taxed therein, whereas there seems to
have been no such authority in the Duvall case. After
the city of Owensboro had acquired such property, and
which was done under the powers in classification (2),
supra, it was adjudged, in the 105 Kentucky case that it
became "public property used for public purposes"
within the tax exemption provisions of section 170 of our
Constitution. Many other cases following the City of
Owensboro case have, without exception, adopted the
principle therein announced, and it is now the settled law
in this jurisdiction that property of a municipality ac-
quired and necessary to the discharge of strictly local
municipal purposes under classification (2), supra, for
which authority is conferred by the municipal charter, is
held by it for a *public* purpose and is exempt from taxa-
tion. That being true, it would appear to necessarily
follow that the same property would likewise be exempt
from appropriation to the satisfaction of the debts of the
municipality.

Coming now to the question involved in this case, we
find the law to be that all property of a municipal cor-
poration acquired for and devoted to any of the public
uses for the carrying out of which it may levy and col-
lect taxes and included in either classifications (1) or
(2), supra, is exempt from levy and sale under execution
in satisfaction of the debts of the municipality, but the
authorities likewise hold that "strictly private" property
of a municipal corporation may be appropriated by judi-

cial process to the satisfaction of its debts. 19 R. C.
L. 1050, par. 339, and cases cited in notes 14 and 15 to
the text. See, also, 1 Dillon on Municipal Corporations
(3d Ed.) p. 572; Beadles v. Fry, 15 Okl. 428, 82 P. 1041,
2 L. R. A. (N. S.) 857.

An almost endless list of cases and treatises on muni-
cipal corporations could be cited in support of the above
statement, and in which the reasons therefor are stated
but which we deem unnecessary to incorporate in this
opinion. So, the further concrete question is: Whether
the attached house and lot in this case, and the proceeds
arising from the rental of the opera house owned by the
city, may either of them, under the law as above stated,
be appropriated by plaintiff to the satisfaction of his
judgment? It was alleged in the answer and admitted
by the demurrer thereto that the house and lot had long
since been acquired by the city in its strictly govern-
mental capacity and was now being used as a place of
storage for tools and implements necessary in maintain-
ing and repairing the public streets of the city. It was
clearly not subject to seizure and sale for the satisfac-
tion of plaintiff's judgment under any sort of judicial
process, and the court did not err in so exempting it.

With reference to the opera house, the rentals from
which the court did appropriate under the attachment
to the satisfaction of plaintiff's debt, it was alleged that
it was a part of a city building erected by it in 1882 with
funds collected by taxation and for the purpose of pro-
viding offices, rooms, and apartments for incumbents of
the various departments of the city government, includ-
ing a legislative hall. It is shown that the lot was not
unreasonably large for that purpose, but, nevertheless,
there was more space than was absolutely required at
the time for such purposes, and the excess was inclosed
by the walls and the roof of the single building and con-
verted into a public hall for the meeting and coming to-
gether of the people in conventions and assemblies, and
which was equipped so that public entertainments in the
way of theatrical performances or lectures could be given
therein; it being also alleged that prior to that time there
was no such building in the city, especially one of suffi-
cient capacity, either public or private. If it was com-
petent for the city to so equip the space of its public
building devoted to such purposes, then it necessarily
follows that neither it nor the income therefrom may be

appropriated by plaintiff to the satisfaction of his judgment.

Under the provisions of section 192 of our Constitution, no private corporation is permitted to acquire and hold title to real estate, "except such as may be proper and necessary for carrying on its legitimate business, for a longer period than five years." Section 567 of our present Statutes is in practically the same language. In construing the constitutional and statutory provisions we have uniformly held that, notwithstanding the plain language employed in both of them, a private corporation could legally acquire title to real estate and hold it in opposition thereto if it was reasonably certain that the corporation would, at not too remote a period, need it in the carrying on of its legitimate business in the future, although it might not need it at the immediate time of its acquisition. See Commonwealth v. Mengel Box Co., 152 Ky. 287, 153 S. W. 771, and Commonwealth v. Louisville Property Co., 139 Ky. 689, 121 S. W. 399, 132 S. W. 413. Also, see Commonwealth v. Mehler, etc., 183 Ky. 11, 208 S. W. 13. Other cases are cited under both of the sections referred to. We have also held that banking institutions and other private corporations might enlarge their necessary buildings beyond the needs for their immediate purposes and rent the excess space or spaces for the carrying on of a private business, an illustration of which is the construction of office buildings by such corporations. See Commonwealth v. Clark County National Bank, 187 Ky. 151, 219 S. W. 175.

If it is competent in the indicated circumstances and under the stated conditions for a strictly private corporation to acquire and so improve real estate to an extent beyond its immediate needs, it is difficult to see why a public municipal corporation might not under the same circumstances and conditions be permitted to do the same without transgressing the judicially declared law with reference to the amount of and purposes for which it may acquire and hold real estate in performing and executing any of its strictly governmental functions in classification (1), supra, or any of its strictly municipal powers under classification (2), supra. Indeed, there appears to be greater reason for strict enforcement of the constitutional and statutory limitations, supra, with respect to private corporations than for the strict enforcement of the judicially declared policy on the same subject relative

to municipal corporations. The public policy behind the one was to prevent the acquisition of title to real estate by private corporations beyond their reasonable needs in prosecuting the purpose for which they were incorporated, and to thereby render it less difficult for the individual citizen to acquire a home for himself and family. It requires but little reflection to see that there would be less danger to such a policy in the acquisition of real estate by municipal corporations than by private ones, and the conclusion seems to be inevitable that if the defendant, City of Frankfort in this case, erected and equipped the opera house, the rents from which are sought to be appropriated to the satisfaction of plaintiff's judgment, in the circumstances and under the conditions permitting private corporations to do likewise, then it was not unlawfully acquired, and neither it nor the income therefrom may be classed as "strictly private" property, which may be subjected to the satisfaction of plaintiff's judgment. But we are not without precedent from this court for so holding.

In the recent case of Keith v. Richards, Mayor, etc., 220 Ky. 201, 294 S. W. 1057, we expressly approved the right of Christian county and the city of Hopkinsville, which is a city of the third class the same as Frankfort and operating under the same charter, to construct and equip, in utilizing excess spaces in the erection of a joint public building, and renting them for private purposes and using the proceeds in payment of the cost of the building. That opinion, as will be seen from reading it, was rendered in a declaratory judgment proceeding filed for the express purpose of ascertaining whether or not it would be lawful for such municipalities (either the county of Christian or the city of Hopkinsville) to do and perform precisely similar acts to that which the city of Frankfort did when it inclosed and equipped its opera house, and which the two municipalities involved in that case only contemplated doing, but which the city of Frankfort actually did in the construction of its opera house, and under the precise circumstances and conditions that received the approval of this court with respect to similar acts on the part of private corporations in the opinions supra.

If the city of Frankfort in erecting its opera house in question did not exceed its corporate power and authority, then the space of its public building so occupied be-

came a part thereof, and which it had the right to construct or acquire in discharge of its purely governmental functions within classification (1), supra, and which it is everywhere declared may not be sequestered and appropriated in satisfaction of judgments or other obligations of the city. The same would also be true if the public building of which the opera house was a part had been acquired for the purpose of performing strictly municipal functions within classification (2), supra.

Furthermore, it is alleged and not denied that the rent sought to be appropriated in this case is put into the general fund of the city and is taken into account by it in estimating the revenue to be raised by taxation of its citizens. But, whether that fact alone would be sufficient to exempt it, or the real estate from which it issued, if such real estate was strictly privately owned by the municipality, is a question we need not determine. If the opera house had been constructed on ground wholly disconnected from and forming no part of any necessary public building of the city; or if the city had embarked in a purely mercantile or other private business having no connection whatever with the discharge of any of its governmental or municipal functions, plaintiff could reach the property or its proceeds, on the ground that the venture was one of strictly private business, we likewise need not determine, since no such case is presented, although possibly it might be true that it could be appropriated in the manner here undertaken, upon the ground that it was strictly private property of the municipality and subject to the satisfaction of its debts under the principles of law hereinbefore stated.

But however that may be, we are clearly convinced that the proceeds from the rental of the opera house in this case under the admitted facts are not subject to seizure in satisfaction of plaintiff's judgment or in satisfaction of any other debt of the city, and which conclusion, we repeat, is bottomed upon the fact that the city had the right under the circumstances to inclose the space of its public building now occupied by the opera house and to equip it in such a manner as that it might reap an income therefrom until it became necessary to occupy it in the discharge of some of its municipal functions coming within either classifications (1) or (2), supra.

We therefore conclude that the court properly refused to appropriate the lot levied on under the attach-

ment in satisfaction of plaintiff's judgment and erroneously sustained the attachment as to the rent from the opera house, and the judgment is reversed on the original appeal and affirmed on the cross-appeal, and for such proceedings as are not inconsistent with this opinion. Whole court sitting.