[Civ. No. 9378. Second Appellate District, Division One.—August 1, 1935.]

C. J. KUBACH COMPANY (a Corporation), Plaintiff and Appellant, v. THE CITY OF LONG BEACH (a Municipal Corporation), Defendant and Appellant.

Richard J. O. Culver, Denio, Hart, Taubman & Simpson and Mathew C. Simpson for Plaintiff and Appellant.

Nowland M. Reid, City Attorney, George M. Trammell, Jr., Assistant City Attorney, and John O. Palstine, Deputy City Attorney, for Defendant and Appellant.

ROTH, J., *pro tem.*—C. J. Kubach Company, a corporation, hereinafter referred to as "company" recovered a judgment against the City of Long Beach, hereinafter referred to as "city" in the sum of $117,822.59, which was entered on December 31, 1932. There was no appeal taken from the judgment and it is therefore final. The company on May 19, 1933, procured a writ of execution against city, delivered the same to the sheriff of Los Angeles County, who by authority thereof and pursuant to written instructions of company proceeded to levy upon the property of city described in said instructions, which property for brevity will hereinafter be referred to as parcel one and parcel two. Thereafter, a notice of motion was served upon company by city requiring company to show cause why an order should not be made quashing the writ of execution and recalling and quashing the levies made thereunder. Pursuant to said notice of motion, a hearing upon affidavits was had in the court below, the matter submitted, and shortly thereafter the trial court made its order in which it denied the motion to quash the writ of execution, denied the motion to recall and quash the levy as to parcel one, and granted the motion to recall and quash the levy as to parcel two. The matter is before us on cross-appeals, since company has appealed from that portion of the order which recalls and quashes the levy as to parcel two, and city appeals

from that portion of the order which denies the quashing of the writ and permits a levy on parcel one.

The affidavits filed by the respective litigants at the hearing show that parcel one was purchased by city with the intention that it should be used at some time for public purposes, to wit: the construction of municipal buildings thereon. It is clear, however, that at the time of the levy the portion of parcel one which was levied upon was not actually being used for a public purpose, and never had been, but was at the time of the levy and had been for at least three years prior thereto leased by the city as "a private yard for parking of automobiles for hire" to an individual, and that the portion of parcel one which was levied upon was not and never had been used by city or any of its departments in either a governmental or proprietary capacity, except in the leasing thereof, as already stated. It was further established that city did not have, nor did it ever have any plan drawn or proposed, nor did it specifically set aside said portion of parcel one for any public building or purpose. Parcel two consists of an oil lease in which city is lessor. The affidavits show that city purchased certain real property as waterbearing lands for a municipal waterworks, and that the said lands were used by the municipal water department as a reservoir site and pumping station until 1923, when an oil lease was made by city as lessor, since which date city has received in oil royalties a sum approximating ten millions of dollars, which moneys as received were deposited in an oil fund. Oil wells were subsequently drilled on parcel two, but do not in any manner interfere with the water use of the property, and the surface of the land included in parcel two is now and has been since the lease used by the water department. This oil fund was not allotted to nor used by the water department, or allotted or devoted to any other department, or set aside for any particular use, but as moneys were received they were spent for various and sundry purposes. In short, the affidavits show that city used this money as it saw fit. With reference to parcel two company levied upon the "city lessor's interest" in the oil lease. Title Guarantee and Trust Company, one of the appellants herein, is an assignee of the judgment held by company, and any disposition herein with reference to company includes Title Guarantee and Trust Company as well.

Generally in connection with all points urged by city, it contends that all property of a municipality whether held in its governmental or proprietary capacity is exempt from execution, but specifically it argues:

1. Company had no right to a writ of execution at all, since the Statutes of 1901, page 794, provide the exclusive mode by which a judgment creditor may proceed to enforce a judgment against a municipality.

2. With reference to parcel one, that all property acquired by a municipality for the express purpose of accommodating municipal buildings, even though the whole of it was not used for that purpose at the time of the levy, is exempt from execution.

3. With reference to parcel two, that the moneys derived from the oil lease were revenues of the city and used for the same purposes as funds which were derived from taxes, and that since public revenues are not subject to sale or execution, that the revenues derived from the oil lease are not subject to sale or execution.

4. That company has no remedy and cannot collect its judgment at all by reason of section 18, article XI, of the Constitution of California, which provides in substance that no city shall incur any indebtedness or liability exceeding in any year the income and revenue for such year. In other words, if the judgment creditor cannot be paid out of the revenues collected in the same year in which the indebtedness was incurred, he cannot be paid at all. Further, the city contends in this connection, that even though certain property of a city is not exempt from execution, such nonexempt property cannot be levied upon when it is shown that it was purchased with the revenue of years other than the year in which the indebtedness was incurred.

Since the Supreme Court in the recent case of *Title Guarantee & Trust Co. and C. J. Kubach Co.* v. *City of Long Beach et al.,* 4 Cal. (2d) 56 [47 Pac. (2d) 472], has decided point four above, we dispose of said contentions first by quoting from that decision, which decision is based upon the identical facts (summarized in said decision) of this case on this point:

''We are unable to agree with the reasoning of respondents herein, for in our view no indebtedness was incurred in excess of the revenue provided. In the fiscal year in which

the obligation to compensate for harbor work was incurred, 1928–29, over a million dollars, proceeds of the bond issue, were available for payment; and at the end of the following fiscal year ample funds still remained. Eventually this money was expended by the city, that is, for obligations incurred in subsequent years. In such a situation there is no justification in principle or authority for the application of the constitutional provision. There were, in fact, ample funds provided for the very obligation incurred, and the subsequent expenditure of those funds in their entirety, either for harbor work or for other purposes, cannot be permitted to defeat the rights of the creditor. The cases relied upon by respondents deal with situations where the funds were exhausted before the end of the fiscal year in which the obligation was incurred. Even if the rule contended for might be applied to a judgment, nevertheless where, as here, funds still remained in that year, but were expended for other purposes in subsequent years, the moneys thus expended are considered as still in the treasury so far as the inhibitions of article XI, section 18, are concerned. (*Brooks* v. *Gilroy,* 219 Cal. 766 [29 Pac. (2d) 212] ; *Bilby* v. *McKenzie,* 112 Cal. 143 [44 Pac. 341] ; see, also, *Martin* v. *Fisher,* 108 Cal. App. 34 [291 Pac. 276] ; *Montague & Co.* v. *English,* 119 Cal. 225 [51 Pac. 327].)''

■ The Statute of 1901, page 794 (Deering's Gen. Laws, 1931, Act 3918, p. 2067) upon which city predicates its first point, is in part as follows:

''Sec. 1. Judgments against counties and municipalities, how to be paid. All final judgments now existing or that may be obtained hereafter against any county, city and county, city, or town of the state of California, shall be paid by the treasurer of said county, city and county, or town as hereinafter provided.''

Section 2 then goes on to provide that the county clerk shall file with the auditor and the officers or board authorized to levy taxes, a complete list of all final judgments against a city ''at least fifteen days before the day on which any tax levy must by law be made''. Provision is made in section 3 for the inclusion of these matters in the tax levy, the effect of an omission to so include and an option is given to the tax-levying authority to provide by the rate fixed for payment of a judgment in full or in instalments by fractional

levies, except that such instalments and levies shall in no case be less than one-tenth of the amount of such judgment. Section 4 deals with ''limitations of actions'' in the event this procedure is adopted.

City argues that the remedy provided by the statute is exclusive, and that the judgment creditor is not entitled to a writ of execution against a city, but in order to collect a judgment must follow the procedure outlined in the statute. The wording of the statute, the case of *LeClerg* v. *San Diego,* 218 Cal. 494 [24 Pac. (2d) 156], and much persuasive reasoning is set forth as the basis of city's position on this point. It becomes necessary then to determine whether the statutory remedy is exclusive and if not what property, if any, of a municipality is exempt. The statute does not declare the remedy it provides is exclusive, and generally speaking a statutory remedy is held to be cumulative to a common-law remedy and not as abrogating it. (*Westman* v. *Dye,* 214 Cal. 28, 37 [4 Pac. (2d) 134].) The case of *LeClerg* v. *San Diego, supra,* cited by city to support its position does not so hold, nor does any other case cited by counsel, and we know of none that does. The LeClerg case simply declares that a city cannot be compelled to use funds which have been raised for other purposes to satisfy a judgment not included in such purpose. The case does not hold, nor does it suggest, that an execution cannot be levied against property of a city which is not exempt from execution.

City claims in effect that all of the property of a municipality is exempt from execution. There is, however, no such rule in this state. Section 688, Code of Civil Procedure, declares in part: ''All goods, chattels, moneys, and other property, both real and personal, or any interest therein, of the judgment debtor, not exempt by law, and all property and rights of property seized and held under attachment in the action, are liable to execution. . . . '' This section does not distinguish between an individual and a municipal corporation. It undoubtedly refers to both, and this is demonstrated when we proceed to section 690, subdivision 15, Code of Civil Procedure, which specifically provides what is exempt from execution so far as a public corporation is concerned, and is as follows: ''All courthouses, jails, public offices and buildings, lots, grounds and personal property, the fixtures, furniture, books, papers, and appur-

tenances belonging to the jail and public offices belonging and appertaining to any county of this state; and all cemeteries, public squares, parks and places, public buildings, town halls, markets, buildings for the use of fire departments and military organizations, and the lots and grounds thereto belonging and appertaining, owned or held by any town or incorporated city, or dedicated by such town or city to health, ornament or public use, or for the use of any fire or military company organized under the laws of this state; . . . ''

Company concedes that property of a municipality that is being used for public purposes or in the execution of its governmental functions is exempt from execution. Company further concedes that property held by a municipality in its proprietary capacity, but actually in use for public purposes is also exempt. Company asserts, however, that property of a municipality held in its proprietary capacity, which is not actually in use for public purposes is not exempt from execution. (*Smith* v. *Morse*, 2 Cal. 524; *Holladay* v. *Frisbie*, 15 Cal. 630; *Wheeler* v. *Miller*, 16 Cal. 124; *LeRoy* v. *Dunkerly*, 54 Cal. 452; *Dunham* v. *Angus*, 145 Cal. 165 [78 Pac. 557]; *Marin Water etc. Co.* v. *Sausalito*, 49 Cal. App. 78, 83 [193 Pac. 294]; 3 Dillon on Municipal Corporations, 5th ed., p. 1586.)

In the last-named case (*Marin Water etc. Co.* v. *Sausalito, supra*) the Supreme Court in denying a hearing says at pages 83, 84: ''The true rule is that the property which it holds for the purpose of exercising its governmental powers or for the purpose of exercising its constitutional power to operate water-works to supply its inhabitants with water or other like public purposes is not subject to execution, the reason being that to subject it to sale would interfere with the exercise by the city of some of the powers for which it was organized. On the other hand, property which it holds merely as a proprietor, devoting it to no use of a public character, such as lands acquired or held for other than public purposes and not in trust for public use, are subject to execution unless some statutory or constitutional provision forbids it. (*Holladay* v. *Frisbie*, 15 Cal. 630; *Wheeler* v. *Miller*, 16 Cal. 124.) The property here proposed to be taken in execution was used for public purposes and was necessary therefor, and hence it comes within the classes first described.''

The Sausalito case was decided after the Statute of 1901 became effective, and as the quotation shows, the Supreme Court in denying a hearing expressly holds that property which is not exempt is subject to execution. It is true that the question here presented is not treated in the opinion, but the clear language of the opinion, the context of which is reiterated in the later case of *United Taxpayers Co.* v. *San Francisco,* 202 Cal. 264 [259 Pac. 1101], the earlier cases and a study of the code sections, impel us to the conclusion, on the first point raised by city that the Statute of 1901, page 794, does not provide the exclusive remedy a judgment creditor has against a city, and that a judgment creditor may, in addition to the remedy provided by the statute referred to, levy upon property of a city which is not exempt from execution.

Since we believe it settled in this state that a city may own property which is not exempt from execution, we proceed to a determination of points two and three.

■ It appears from the affidavit of Brison, city clerk of city, that parcel one is a portion of a downtown one-half block, 140 feet by 256 feet in dimension, which entire one-half block was acquired by a single purchase by the city; that from time to time and as needed for such purposes various portions of said half block were actually used for the accommodation of additional municipal buildings, offices and quarters, such buildings, offices and quarters now occupying approximately two-thirds of the area of such half block, and that the remaining one-third of said half block not being immediately necessary for municipal buildings, offices and quarters, the same has been leased as and for an automobile parking lot, each lease or other official record referring to said portion of said half block expressly reserving to the lessor city therein the right and power to cancel said lease in the event the city council of city determines that said property is necessary for a permanent city building.

It is clear from the above recital of facts, which seem to be admitted, that parcel one was acquired by city in its governmental capacity, and that the greater portion thereof, at least two-thirds, was actually used for governmental purposes. The mere fact that a one-third portion thereof was being temporarily used for a parking lot under a lease (which could be terminated at will) with an individual, does not

change the character of the property. It is settled that such property held by a city in its governmental capacity and any income from same are exempt from execution. (*Wood* v. *San Francisco,* 4 Cal. 190; *Hart* v. *Burnett,* 15 Cal. 530; *Oakland* v. *Oakland Water Front Co.,* 118 Cal. 160 [50 Pac. 277]; *United Taxpayers Co.* v. *San Francisco,* 202 Cal. 264 [259 Pac. 1101]; *Marin Water etc. Co.* v. *Sausalito, supra; Kline* v. *Parish of Ascension,* 33 La. Ann. 562; *Board of Councilmen* v. *White,* 224 Ky. 570 [6 S. W. (2d) 699]; *Russell & Johnson* v. *Oneonta,* 199 Ala. 64 [73 So. 986].)

In *Wood* v. *San Francisco, supra,* it was held that a public street was not subject to execution, and also that the income derived by the city from a lease of a portion of the street to a private individual was not subject to execution.

In *United Taxpayers Co.* v. *San Francisco, supra,* it was held that property which had been acquired for and originally used as a public jail, but which, since the destruction of the jail building in the earthquake and fire of 1906, had been for some twenty years leased by the city to a private person, who used the premises as a cafe, saloon and rooming house, was not subject to execution.

In *Board of Councilmen* v. *White, supra,* execution was levied upon rentals due the city under a lease of the excess portion of the city hall to a private person for use as a theater or opera house, and there the court said: "If it was competent for the city to so equip the space of its public building devoted to such purposes, then it necessarily follows that neither it nor the income therefrom may be appropriated by plaintiff to the satisfaction of his judgment." (224 Ky. 570 [6 S. W. (2d) 699, 701, 702].)

We see no practical distinction between the building of one structure called a city hall, a portion of which is leased as a private theater, and the purchase of a parcel of land for governmental buildings, and a lease of a portion of such parcel for private business purposes. In the case of the city hall, it is fair to conclude that as soon as the needs of the city required the space used by the theater for public offices, it would be so used, and in this case it is fair to assume that as soon as city requires the unused portion of parcel one for public buildings, city will use it for that purpose.

We conclude from the facts and the foregoing authorities that the whole of parcel one was purchased by city in its

governmental capacity; that the specific declaration of the purpose for which it was purchased, reinforced with the actual use of more than two-thirds of the parcel for such declared purpose, impresses the whole of said parcel with a public use, as said phrase is used by the cases, and that said parcel one was therefore exempt from execution.

We now direct our attention to parcel two and the answer to city's third proposition.     It may be stated at the outset that a public utility such as a waterworks is held and operated by a city in its proprietary and not its governmental capacity. (*Davoust* v. *City of Alameda,* 149 Cal. 69, 70 [84 Pac. 760, 9 Ann. Cas. 847, 5 L. R. A. (N. S.) 536]; *South Pasadena* v. *Pasadena Land & Water Co.,* 152 Cal. 579, 593 [93 Pac. 490].) It has been noted, however, that it is not alone property owned by a city in its governmental capacity that is exempt. The property owned by a city in its proprietary capacity for the purpose of exercising proprietary functions authorized by the Constitution is also exempt, "the reason being that to subject it to sale would interfere with the exercise by the city of some of the powers for which it was organized". (*Marin Water etc. Co.* v. *Sausalito, supra.*) It may be conceded, therefore, and company does in fact concede, that if city were actually using that portion of parcel two, which has been levied upon in the operation of its waterworks, that parcel two would be exempt.

The uncontroverted facts with reference to parcel two are that it was originally purchased as water-bearing lands for a municipal waterworks, and was used by city as a reservoir site and pumping station for the use of the municipal water department; that the oil lease was entered into by city on June 6, 1923, since which date said property is still used as a part of the waterworks; that the use of the surface of parcel two does not interfere with operations under the lease and that operations under the lease do not interfere with the use of the land as part of the waterworks; that since the making of the lease the city has received approximately ten million dollars in royalties thereunder, and that the revenue so derived was spent for every and any purpose, as determined by the discretion of the city council. Said oil royalties were not at any time and have not been dedicated or allotted to or exclusively used by the water department, nor have they

been dedicated or allotted for any particular purpose, although it is shown that some of the funds derived from the oil lease were from time to time granted to and used by the water department.

It should also be made clear at this point that we are not called upon to decide whether the real estate comprised in parcel two is subject to execution. Company instructed the sheriff to levy upon "lessor's interest in and to that certain oil and gas lease . . . covering the following described real property . . . " A lessor's interest in an oil lease can be sold separate and apart from the land itself, and a levy upon a lessor's interest is not a levy upon the land covered thereby. (*Standard Oil Co.* v. *John P. Mills Organization,* 75 Cal. App. Dec. 798 [27 Pac. (2d) 650]; Id., 3 Cal. (2d) 128 [43 Pac. (2d) 797].)

The operation of a waterworks is within the constitutional power of city, and property used for such a purpose is undoubtedly exempt. (*Marin Water etc. Co.* v. *Sausalito, supra.*) An oil lease on the subsurface of property which is obviously not being used for any purpose in connection with the business of operating waterworks is not, in our opinion, embraced within such an exemption.

We see no distinction in fact or in principle between a situation in which a city obtains money by selling lots not held or used in a governmental capacity, or as a necessary adjunct to the exercise of a proprietary public function authorized by the Constitution, and one in which it obtains money in the form of royalties from an oil lease made, not in its governmental capacity, and not as a necessary incident to the exercise of a proprietary use function. The fact that the oil lease is on land used as a necessary part of a city waterworks does not, in our opinion, place the income from such land in the same category as income received from land held in a governmental capacity. No statute authorizes such exemption with reference to property or the income thereof that may once have been impressed with a public use, when such property is held in a proprietary, as distinguished from a governmental, capacity, nor does any case which has been cited to us. While we cannot say that this question has been clearly settled, the authorities called to our attention suggest that such royalties would not be exempt, and it seems to us that such is the sounder view. In the case of *Hart* v. *City of*

*New Orleans,* 12 Fed. 292, 294, a judgment creditor garnisheed instalment payments due to a city "for the privileges granted, and the interest of the city in the sugar-shed warehouses", and in upholding the levy, the court said: "These sums are the purchase price of property which the city has sold, the same to be paid in instalments. . . . It is a general principle of law that the private property of municipal corporations, i. e., that which is not necessary to the performance of the functions of government, may be seized and sold for the payment of debts. See *Holladay* v. *Frisbie,* 15 Cal. 630. . . . "

In the Sausalito case, *supra,* at page 83, the Supreme Court said: "On the other hand, property which it holds merely as a proprietor devoting it to no use of a public character, such as lands acquired or held for other than public purposes and not in trust for public use, are subject to execution unless some statutory or constitutional provision forbids it."

The royalties received by city under the oil lease it received merely as a proprietor. Except as all moneys which are received by city are in a sense received for public purposes, such royalties were no more devoted to a use of a public character or held in trust for a public use than the moneys obtained by city in the sale of beach lands. (*Holladay* v. *Frisbie,* 15 Cal. 630; *Smith* v. *Morse,* 2 Cal. 524; *Wheeler* v. *Miller,* 16 Cal. 124; *LeRoy* v. *Dunkerly,* 54 Cal. 452; *Frink* v. *Roe,* 70 Cal. 296 [11 Pac. 820]; *Dunham* v. *Angus,* 145 Cal. 165 [78 Pac. 557].) Again referring to the Sausalito case (49 Cal. App. 78, at 84) the Supreme Court said: "The property here proposed to be taken in execution was used for public purposes and was necessary therefor, and hence it comes within the classes first described." The property here proposed to be taken is not used for a public purpose and is not necessary therefor. ■ Since in our view of the matter the royalties under the oil lease are not exempt from execution, it is our further opinion that they cannot be made exempt merely because the city elects to classify such royalties as revenues. Generally speaking public revenues derived from taxes are not subject to execution. (1 Dillon Municipal Corporations, 5th ed., sec. 248, p. 467.) The mere fact, however, that the royalties in this case were in a substantial amount and helped to pay the city's expenses, does not make such royalties revenues in the sense

that they are derived from taxes, and as such exempt from execution. (*Hart* v. *City of New Orleans, supra.*) If such were the case, a city having the most obvious kind of exempt property could avoid execution by merely converting it into cash. In the Hart case, *supra*, stating one of the objections of city in that case which is identical to the one raised here, to wit: that the moneys levied upon are moneys due the city as a part of the revenue of the corporation, and as such applicable to the current expenses of municipal administration, the court at page 294 says: "*It is not considered that such sums are now or ever were any portion of the regular revenue of the city, even if the last city budget enumerates them.*" (Italics ours.)

The order denying the motion to quash the execution is affirmed. The order quashing the levy of the execution as to parcel two is reversed, and the order denying motion to quash the levy as to parcel one is reversed.

Houser, Acting P. J., and York, J., concurred.