Armstrong v. Kleinhans & Simonson.

---

CASE 50—TRADE-MARK—OCTOBER 28, 1884.

# Armstrong v. Kleinhans & Simonson.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. Appellant used the words "Tower Palace" to describe and designate the place where his business was carried on, and not the particular business nor the person transacting it.

2. These words were never used as a trade-mark by appellant; but they were used by him simply to indicate the location on Market street, in Louisville, where he did business.

3. A tenant can not apply to a building a particular name intended to be descriptive of the place without the consent of the owner, as distinguished from the name adopted as a trade-mark, and then at his pleas-

Armstrong v. Kleinhans & Simonson.

ure change its original signification and apply the identical name to another and distinct locality.

ELLIOTT & HEMINGRAY AND MUIR & HEYMAN FOR APPELLANT.

1. It is the mischief to another's business by using his signs and marks by which his business and goods are known that should be prevented by the Chancellor, and it is not necessary to show that the offending party knew that the signs and marks he adopted belonged to another.
2. Appellant's business was injured by appellees' assuming the name of the "Tower Palace."
3. That appellees did not invent the name, and would not have used it unless they could make money thereby, is apparent.
4. Appellant, having invented the name, is entitled to its use to the exclusion of all others. (5th C. & J. Appeals, 508; S. C., 22; Law Times, N. S., 260; 4 K. & J., 747; 3 My. & Cr., 338; 4 Abb. Pr., 394; 61 N. Y., 226; Coddington's Digest, 945; 4 Hun., 651; Coddington's Digest, 949; *Ib.*, 124; 6 Bosw., 354; Cox's Tr.-Mark Cases, 115; *Ib.*, 126; *Ib.*, 314; *Ib.*, 129; *Ib.*, 300; *Ib.*, 507; *Ib.*, 340; 28 Howard Pr., 120; Sand Sup. Ct., 725; 25 Eng. Rep., 21; 2 Brews., 308; Singer v. Wilson, 3 App. Cases, 376 House Lords; Fed. Rep., 696; *Ib.*, 707; 10 Ch. D., 436; 18 W. R., 181; Cox's Manual Tr.-Marks, sections 226, 234. 325; 4 De., G., J. & S., 380; 1 H. & M., 447; 52 How. Pr., 169; 1 Hughes, 115; 2 Bos., 1.)

F. HAGAN FOR APPELLEES.

1. Appellant never had any trade-mark in the name "Tower Palace."
2. He never used the words in any other way than in the name of the house.
3. The name "Tower Palace" is not and could not be a trade-mark, and has none of the elements of a trade-mark.
4. Appellant does not claim a violation of good will, and if he did, he has not made and can not make out a case containing the facts and elements necessary to demand protection. (8 Fed. R., 29; 52 Howard Pr., 169; 39 Law Jour., N S. Ch., 79; 21 T. R. N. S., 386; Brown, 144, 96, 101; 35 Conn., 402; Upton, 26. 86, 98, 99; 45 Cal., 467; 54 Ill., 441; 17 Barb., 608; 5 McLean, 256; 5 Jones, 265; 3 Allen, 76; 3 Sand, 725; 13 Wall, 322; 10 Law R., 644.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant, a merchant engaged in the clothing business in the city of Louisville, seeks, in this action, judg-

ment requiring appellees, engaged in like business, to remove from a store-house, No. 150 West Market street, occupied by them, a sign "Tower Palace," denominated in the petition his trade-mark, and enjoining them from appropriating or using it by advertisement or otherwise.

The building was erected by J. G. Mathews, the proprietor, in 1871. But before it was fully completed he leased it to appellant, who took possession in November of that year and occupied it until 1877, when he removed to a house on Jefferson street, where he has since carried on the same business.

Some time after he left, Mathews took possession of the house on Market street and used it as a carpet store until 1879, when he leased it to appellees.

Soon after appellant took possession of it a large and conspicuous open sign, on each side of which were the words "Tower Palace," was placed above, but supported by, a structure upon top of the building called a tower, and above the sign was a flag. And the same words were also moulded in an iron slab used as a door sill at the threshhold. Upon each side of the building, which was higher than those adjoining it, and some distance below the tower was painted: "J. M. Armstrong, Men's and Boys' clothing," and over the front door his name was put.

When appellant left the building he, without the consent of Mathews, took the sign from the tower and placed it upon the house to which he removed on Jefferson street. But when Mathews took possession he put a new sign of "Tower Palace" where the other had been, and called his store, while he occupied the build-

ing, "Tower Palace" carpet store, and that sign was upon the tower when appellees got possession, and is yet there.

It appears from the evidence that appellees, in advertising their business, indicate the place where it is carried on as "Tower Palace, No. 150 West Market street," but describe their store as "The Mammoth Clothing Store," and the latter words, together with their firm name, are painted on the sides of the building.

Immediately after taking possession, in 1871, appellant commenced to advertise his business extensively in the newspapers and other ways usually resorted to by enterprising merchants, and succeeded in making both his business and the place on Market street widely and favorably known. And there is evidence tending to show that since his removal to Jefferson street he has lost some custom on account of the house on Market street being still designated by the name of, and the business of appellees being advertised as conducted at, the "Tower Palace." But to what extent he has been injured by the confusion and clashing of interests caused by two houses in the same city where the same kind of business is transacted being called by the same name, does not appear. Nor is it necessary to inquire in order to determine whether he is entitled to the relief sought in this action.

The controlling question in the case is, has appellant acquired an exclusive property right to the name or sign, "Tower Palace," transferable to any place of business he may occupy, or was it merely used by him while he did business on Market street as an appropriate description of the building there?

If he has a personal right to the name, the use and appropriation of it by appellees in the manner they have done must be regarded as deceptive and an unlawful injury to his business. But if, on the contrary, the name was originally intended and used to designate the building, the sign upon the tower is not deceptive, nor the advertisement by appellees of their place of business as being "Tower Palace, No. 150 West Market street," untrue, and consequently appellant can not maintain this action.

The building was erected by Mathews, the owner, for a merchant's business house, according to a model of his own selection, is eligibly situated, three stories high, has ceilings of unusual height, and being surmounted by the structure called a tower presents an imposing and striking appearance.

One-half the cost of the sign first placed upon the tower was paid by appellant and Mathews each, the latter proffering to contribute because, as appellant testifies, he was proud of his building, and not satisfied with the wooden sign about to be put up.

There is some controversy whether appellant or Mathews originated the name "Tower Palace." But it is affirmatively, and we think satisfactorily, proved that Mathews had determined to give that name to his building before it was completed or leased to appellant.

The architect who superintended the erection of the building testified that the structure upon top of it can not be aptly called a tower, and it probably resembles more an observatory than a tower. But whether it can with technical accuracy be so denominated or not, it has from the beginning been called a tower by all par-

ties interested, and the name "Tower Palace," which. appears to have been accepted by the public as appropriately applied to the building, was undoubtedly suggested by it. Moreover, as conclusive evidence that. appellant regarded it fitting to call it a tower, and apply the derivative name to the building in advertising the opening of his business there in 1871, he described the place as "Tower Palace," and the structure upon it as "the beautiful tower that commands a magnificent. view of the Ohio river bridge, etc."

It may be true that the house on Market street ac-- quired some additional celebrity, and was increased in value as a business stand by the skill and enterprise of appellant in bringing it to public notice as his place of business ; but it is also true that he availed himself of the advantage of its eligible location and excellence as a business place to increase his business. And, in our opinion, the evidence clearly shows that while he occupied it the name "Tower Palace" was adopted and used by him and understood and recognized by his. customers as a peculiar and appropriate designation and description of the house and not of the business he carried on there. Such being the case, can the name now, without the consent and to the injury of Mathews, the owner, and his tenants, be detached from the building, made to assume a secondary and wholly different signification, and untruthfully applied either to the house occupied by appellant on Jefferson street that has nothing about it suggestive of a tower, or to the business done there by him ?

In the case of Howard v. Henriques, 3 Sand S. C., 725, the plaintiff was proprietor of a hotel known as

"Irving House" or "Irving Hotel," and the defendants having opened another hotel in the same city, which they named "Irving Hotel," were enjoined from using the name. In that case the court said: "We think that the principle of the rule is the same to whatever subject it may be applied, and that a party will be protected in the use of a name which he has appropriated and by his skill rendered valuable, whether the same is upon articles of personal property which may be manufactured, or applied to a hotel where he has built up a prosperous business."

In the case of Booth v. Jarrett, 52 Howard, 169, the plaintiff, Edwin Booth, established a theater called "Booth's Theater," and afterwards assigned the lease to J. B. Booth, under whom the defendants claimed. It was held the plaintiff was not entitled to an injunction restraining the defendants from continuing the name Booth in connection with the theater. The ground upon which the injunction was refused was that the plaintiff's name had become affixed to the establishment and did not imply that it was conducted by him.

The protection afforded by the courts in such cases is to the good will of a trade or business which, in Story on Partnerships, section 99, is defined to be "the advantage or benefit which is acquired by an establishment beyond the mere value of capital stock funds or property employed therein, in consequence of the general public patronage or encouragement which it receives from constant and habitual customers on account of its local position or common celebrity or reputation for skill, affluence or punctuality, or from other accidental

circumstances or necessities, or even from ancient par-
tiality or prejudices." And in the same connection,
Lord Elden is quoted as saying that "a good will of
this sort was nothing more than the probability that
the old customers would resort to the old place.".

In each of the two cases cited the name of the orig-
inal proprietor was given to the place and was con-
nected with the business carried on there for which the
building was erected and to which it was adapted. And
while it is not in terms stated in the first-mentioned
case, as it is in the second, that the name had become
affixed to the establishment, it is obvious that it is true
in the one as in the other, and constituted in both the
reason for the conclusion arrived at.

If the distinctive name of a hotel or theater may be
the subject of appropriation as was correctly deter-
mined in the two cases referred to, we do not per-
ceive a satisfactory reason why, upon the same princi-
ple, the name of a house constructed for the purpose of,
adapted to and valuable as, a merchant's business house
may not as well be appropriated and used by the owner
or his lessees in connection with the business carried on
there. But it is not necessary to decide that question,
as the issue here involved is as to the exclusive right of
appellant to the name in contest.

In the case of Pepper v. Labrot & Graham, decided
by Justice Mathews, of the Supreme Court of the United
States, which may be found reported in 8 Fed. Rep.,
29, and also in 3 Ky. Law Reporter, 126, a question
similar to the one here presented was elaborately con-
sidered.

Pepper, the complainant, had at one time been the

owner by inheritance, of a tract of land whereon his. father for many years before his death had carried on a distillery known as the Oscar Pepper Distillery, at which a superior quality of whisky, celebrated as "Old Crow" whisky was manufactured. When the complainant, after the death of his father, got possession, he erected a new distillery on a different part of the tract of land at which he manufactured whisky, branding on the heads of the barrels containing it the words "Old Oscar Pepper Distillery Hand-made Sour Mash, James E. Pepper, Proprietor, Woodford county, Kentucky."

Subsequently he became bankrupt and the land and distillery were sold and eventually became the property of the defendants, Labrot & Graham, who manufactured whisky there, putting upon the heads of their barrels the same words except that their firm name was. substituted for that of the complainant.

The object of the action was to enjoin the defendants: from appropriating the words "Old Oscar Pepper," which the complainant claimed to have originated and adopted as his trade-mark to designate whisky made by him without reference to the place of manufacture.

It was held as a fair inference from the numerous authorities referred to in the opinion of Justice Mathews, that when a trade-mark consists merely in the name of the establishment itself where the manufacture is carried on and becomes attached to the manufactured article only as the product of that particular establishment, a sale of the establishment will carry with it to the purchaser the exclusive right to use the name it had previously acquired, in connection with his own manufac-

ture at the same place of a similar article, by operation of law. And applying that rule, he held that the words " Old Oscar Pepper Distillery " never lost their primary signification, and never acquired a secondary meaning, and as applied to the whisky made by the complainant, "the words ' Old Oscar Pepper' never came to mean more than whisky made at that particular distillery. They did not become a denomination of whisky, as the manufacture of the complainant or of any person, but characterized it only as entitled to public favor, by reason of the reputation of the particular distillery at which it purported to have been made."

It was accordingly decided not only that the complainant had no right to the exclusive use of the words, claimed by him as his trade-mark, but that he had no right to use them at all in connection with whisky manufactured at a different place, because to do so would deceive the public by a false representation in respect to the place of manufacture.

We have been referred by counsel to the case of Woodward v. Lazar, 21 Cal., 448, in support of appellant.

In that case Woodward, being the lessee of a lot of land, erected a building upon it, used by him as a hotel, to which he gave the fanciful and arbitrary name of "What Cheer House." Before the expiration of his lease he purchased an adjoining lot, upon which he erected a larger building, and for a time occupied both buildings as one establishment under the name of "What Cheer House," the sign being removed from the first and placed upon the second building. He afterwards surrendered the leased premises, but con-

Armstrong v. Kleinhans & Simonson.

tinued to carry on the business of the "What Cheer House" in the building erected by him on his own lot.

Afterwards the defendants purchased the first-mentioned lot and building, and opened a hotel under the name of "Original What Cheer House."

It was held in that case that the name established for a hotel is a trade-mark, in which the proprietor has a valuable interest. That a person may have a right, interest or property in a particular name, which he has given to a particular house, and for which house, under the name given to it, a reputation and good will may have been acquired. But a tenant, by giving a particular name to a building which he applies to some particular use, as a sign of the business done at that place, does not thereby make the name a fixture to the building and transfer it irrevocably to the landlord.

We do not assent to the proposition that a tenant has the right to apply a name to a building without the consent of the owner, nor that a name which is intended to be and is descriptive of the place, as distinguished from the name adopted as a trade-mark and applied to the particular business carried on there, can, at the pleasure of the tenant, be made to change its original signification and applied to another and distinct place.

But conceding the correctness of the conclusion of the court in that case, it does not sustain the claim of appellant. There the name of the hotel was not applicable to or descriptive of a particular building, but was arbitrary, and applied to the business carried on first in the building upon the leased premises and afterwards in both of the buildings. Here the name "Tower Palace" was intended to describe and designate the

place, and not the particular business, nor the person carrying it on. It never was used as a trade-mark by appellant, but simply to indicate the particular place on Market street where he did business, and consequently he never acquired the exclusive right to use the name, except as applicable to and while he occupied that building.

The judgment must be affirmed.