## E. R. COOK v. LYON COUNTY.

## E. R. COOK v. LYON COUNTY.

## C. A. THOMPSON v. LYON COUNTY.

[Abstract Kentucky Law Reporter, Vol. 6—361.]

**Power of County Court to Order Election to Vote on Issuing Bonds.**

When reference is made in the law authorizing the county court to call an election as to whether the county should subscribe for railroad stock and issue bonds, etc., it means the county court presided over by the county judge alone and the justices of the county need not be called together for such purpose.

**Estoppel of County.**

After levying and collecting a tax to pay interest on bonds of the county issued to take stock in a railroad company and after obtaining from the legislature an act to authorize it to levy and collect a tax to enable it to pay such bonds before their maturity the county is estopped from defending a suit on the bonds by alleging their invalidity because the election to determine whether they should be issued had not been called by the proper official.

**County Property Not Subject to Attachment.**

Means or property which is used by the county for strictly governmental purposes can not be seized by attachment or upon execution.

6

**Attachment or Levy Upon a Particular Fund.**

Where a particular fund is raised by a levy for a particular purpose and can not lawfully be used for any other purpose it is not held for governmental purposes and may be attached at the suit of a creditor.

### APPEALS FROM LYON CIRCUIT COURT.

November 20, 1884.

Opinion by Judge Holt:

The appellee by a cross appeal in these cases questions the right of the appellants to a judgment upon the overdue interest coupons held by them and which were attached to its bonds, that were issued and delivered to the Elizabethtown and Paducah Railroad Company by virtue of an act to amend the charter of said road, approved February 24, 1868.

It is proper that they should be first considered, because if sustained, the appeals by the appellants must fail.

It is urged that the bonds and coupons are not valid because the county judge in ordering the election to take the vote as to whether the county should subscribe stock to said road, and in making the subscription and issuing the bonds therefor, acted alone and without associating the Justices of the county with him.

The act in question provides that all this shall be done by the "County Court" and contains no language from which it can be even inferred that the legislature intended that it should be done by the County Levy or Fiscal Court of the county; and although there is some reason in the claim that when the term "County Court" is used as to fiscal matters it refers to the Fiscal Court, yet, as a general rule when reference is made to a county court it means a court presided over by the County Judge alone; and should be held to so mean when used in connection with fiscal matters if it relates to mere ministerial duties.

Moreover, in this instance the direction of the legislature to the County Court to do ministerial acts was imperative; and it is therefore immaterial whether it was done by the County Judge alone or by him and the Justices, even admitting (as we do not) that a bona fide holder of the bonds can be affected by such matters.

The non-delivery of the certificates of stock to the county, or that the payment of the coupons was never demanded at the bank where they were payable, can not avail the appellee as no refusal by or inability of the company to deliver the certificates is alleged or that the appellee had provided the funds at the stipulated place of payment to satisfy the coupons.  In fact it is alleged and not denied, that it had not done so; and certainly an innocent holder of them was not bound to look to the delivery to the county of the stock certificates.

Finally it is urged, that the above recited act is unconstitutional because it required the County Court to submit to a vote any sum, however large, that the railroad company might name as a proposed subscription to its road.  We deem it a sufficient answer to this, to say that the voters of the county had the right to accept or reject it as they pleased; and that its submission did not require its acceptance.

The appellee has estopped itself from relying upon some of the defenses above noticed, by its action.  Before these suits were brought it had levied and collected a tax to pay the interest coupons attached to the bonds; had obtained from the legislature in 1878 an act to authorize it to levy and collect a tax to enable it to purchase these very bonds before their maturity from the holders; and had in fact by virtue of the act levied and collected a tax for such purpose.  It can not therefore be heard now to say that the bonds and coupons are invalid.

This conclusion as to the grounds of the cross appeals necessitates the consideration of the appeals proper; and to do so properly a brief statement of facts is necessary.

By section 9 of the act above named and under which the coupons were issued, it was made the duty of the County Court of Lyon County to levy and cause to be collected a tax sufficient to pay the interest on the bonds and which was due semi-annually.

Section 10 provides for the appointment by the County Court of a "Board of Commissioners of the Sinking Fund" of the county, one of whom was to be its treasurer and receive the fund that might thus be collected for the payment of the coupons; and when collected it was to be appropriated to their payment.

The act made provisions also for the payment of the bonds or the principal of the debt; and provided, that any dividends, which

might be declared upon the county's stock in the railroad were to be applied first to the payment of the interest upon the debt, and then any surplus remaining was to be used in purchasing the bonds.

By an act of the legislature entitled "An act for the benefit of the taxpayers of Lyon County" approved February 6, 1878, a "Financial Board of Lyon County" was created; and section 11 provides as follows:

"It shall be the duty of said Financial Board to decide whether a levy should be made by the County Court of Lyon County for the purpose of raising a sinking fund to be used in the purchase of the bonds of Lyon County, given to the Elizabethtown and Paducah Railroad Company before the maturity of said bonds; and similar levies shall be made as often as said board may decide."

Section 17 of the act provides for the appointment by the County Court of a treasurer to receive said fund; while section 20 reads thus:

"The money realized from taxes levied and collected under this act shall be used alone for the purchase of the principal of the said bonds given by Lyon County to the Elizabethtown and Paducah Railroad Company, and the costs and expenses incident to the levies and collection thereof; and shall not be appropriated to, or used for any other purpose by any character of order or proceedings whatever. After a levy shall have been made pursuant to this act, it shall be the duty of said County Court to negotiate with the holders of said bonds in regard to the purchase thereof and shall have the authority to agree with them upon the price they shall receive for their said bonds, and to prescribe rules to govern said treasurer in the purchase thereof, subject to such restrictions as to the amount that may be paid for them as may be fixed by said Financial Board."

The appellants having attached the fund raised under this last act, the court below held that it could not be seized by legal process to pay their debts, evidenced by the interest coupons; and of this ruling they now complain.

It is admitted by their eminent counsel, that if the restriction imposed upon the use of this fund by the legislature is valid and constitutional, that they can not succeed; but it is urged that it is illegal and that the act to that extent only is unconstitutional.

It seems to us, that if the money is not appropriated to the use

for which it was specially raised by taxation, that then it would be held in trust by the party in possession of it for the taxpayers, and that it would have to be refunded to them, and could not be subjected by the appellants; and even if it did not have to be returned to them, but fell into the general treasury of the county then it may well be doubted whether it could be reached by the appellants by attachment.

The authorities are conflicting upon this question. It seems reasonable to suppose that if a county can contract a debt, that its property should be liable to seizure to pay it; but the offices of government must be performed, and not impeded; and the need of this is so absolute that other considerations can not prevail; and the current authorities is that means or property which were used for strictly governmental purposes can not be seized by attachment or upon execution. 1 Dillon on Municipal Corporations, sections 100-101.

It is true however that as to all this transaction the county is to be treated as a quasi private corporation.

It was not acting as to a governmental use or trust. Says Mr. Dillon in section 576 of his work supra. "In some of the states it is held that the private property of municipal corporations, that is such as they own for profit, are charged with no public trusts or uses, may be sold on execution against them. In other states, either by statute or on general principles, it is declared that judgments against municipal corporations can not be enforced by ordinary writs of execution, and that the remedy of the creditor is by mandamus to compel payment, or the levy of a tax for that purpose. Questions of this kind are influenced much by local legislation. On principle in the absence of statutable provision it would seem to be a sound view to hold that the right to contract and the power to be sued gives the creditor a right to recover judgment; that judgments should be enforceable by execution against the strictly private property of the corporation, but not against property owned or used by the corporation for public purposes." (*Merriwether v. Garrett,* 102 U. S. 501.)

We therefore conclude that the fund in question is liable to the attachments of the appellants if the legislative restriction as to its use is not valid. It is not to be presumed that the law making power has acted in violation of the constitution. It is true that a legis-

lature can not dispense with or suspend the operation of a general law in favor of a particular individual.

For instance, the law of exemption can not be varied for particular individuals or localities.

The statute of limitations can not be suspended for a particular individual.

The privilege of taking a greater rate of interest than is allowed by the general law can not be given to a particular person; but the case now presented.is not in our opinion of such a character.

The act which authorized the issue of the appellant's coupons provided the manner and means of payment. They must be presumed to have accepted them, looking to the mode thus provided for their payment, which they can compel by the proper legal procedure, and had no claim upon the legislature for any additional remedy.

The fund in contest was created by the legislature for, and limited to a special purpose. An examination of legislative proceedings will show that this has been done in cases substantially similar to this from time immemorial.

The limitation violated no vested right of a creditor. The creation of the fund was purely a voluntary matter upon the part of the legislature which the creditors had no right to demand; and hence it had the power to limit the use of it.

The writer last cited says: "The legitimate authority of the legislature over municipal corporations extends to making provisions concerning their funds and revenues, and the authority is not abridged because the purpose to which the revenue is to be appropriated is specified in the charter." (1 Dillon on Municipal Corporations, section 62.)

In this instance the county could not have ordered the treasurer of the financial board to apply the money to a different purpose from that provided by the legislature; and the appellants have no greater right than the county authorities had as to it.

It is said in section 458 of Drake on Attachments that "a fundamental doctrine of garnishment is that the plaintiff does not acquire any greater rights against the garnishee (who was the treasurer in this case) than the defendant himself possesses."

The judgment below is *affirmed* upon both the original and cross appeals.

*John Feland, for appellants.*

*Wm. Lindsay, for appellee.*
[Cited, in *Feland v. Morton,* 10 Ky. L. 219, 8 S. W. 852.]