## City of Hazard v. Duff et al.

June 10, 1941.

W. E. Faulkner for appellant.

John E. Campbell for appellees.

Opinion of the Court by Van Sant, Commissioner—Affirming.

This action was instituted by the city of Hazard against H. P. Duff, a judgment creditor of said city, and Justus Begley, sheriff of Perry county, seeking to enjoin said defendants from proceeding further under an execution in favor of Duff against the plaintiff and which had been levied on a brick building of plaintiff situate on High Street in the city of Hazard.

It is claimed by appellant that said property was acquired by the city for governmental purposes; that same is in the process of being repaired and improved, and on completion will be occupied, for governmental purposes

and therefore is not subject to execution. Defendants contend that the property is held by the city in its proprietary capacity and for that reason the city is not entitled to the immunity claimed.

A municipal corporation has a two-fold character, the one governmental and the other proprietary. In the establishment of a municipality, the state, acting through its Legislature, does not divest itself of its right to administer the public affairs of the state in its entirety; it merely constitutes the city its agent for the purpose of government within a limited territory. As such agency, the city executes the functions which would otherwise be performed by the state itself, and in such capacity it is imbued with all the rights and immunities of sovereignty.

In its private capacity it is clothed with an entirely different character.

It has long been recognized that the people of a local community, more or less compact in its development, require certain conveniences which are not necessary or feasible to persons in rural or less compact districts, and such conveniences as would be financially impossible of attainment in communities less densely populated. These conveniences are ofttime furnished by private corporations organized for profit. But since such conveniences often become necessities to be enjoyed and utilized by the entire population in circumscribed areas, it has sometimes been found more satisfactory to include the entire community in the undertaking or organization of the business furnishing them, and, where the boundaries of the community to be benefited by such conveniences are coincident with the boundaries of a municipal corporation created by the Legislature, it has been customary for the Legislature to grant to the municipality the right to exercise the franchise which might otherwise be granted to a private corporation. When a municipality elects to function under this authority it must do so as a private corporation and, in such capacity, it may not be clothed with the immunities, rights, and privileges of the sovereignty. It is, in such private capacity, a franchise holder of the sovereignty. Taxpayers of the municipality become the owners of the business thus authorized to be conducted, and while acting in that capacity, the municipality is subject to the liabilities of any corporation or association engaged in like or similar enterprises. 19 R. C. L. Section

9, page 697. The municipality is not liable for torts committed in the exercise of its governmental functions; neither is its property used in that capacity subject to execution. But it is liable for its torts committed in the exercise of its private capacity; and its property used in its private capacity is subject to execution.

In 19 R. C. L. Section 339, page 1050, it is said:

"A judgment creditor cannot levy execution upon property of a municipal corporation which is devoted to public use but this rule does not extend to property of a municipal corporation which is held by the corporation in its private or proprietary capacity and is not devoted to any public use."

To the same effect is the holding in Cook v. Lyon County, 6 Ky. Law Rep. 561, 13 Ky. Op. 81.

It is sometimes difficult to draw the distinction between the two capacities of a municipality. The express functions are very closely related and what has been held to be a municipal function in some states has been held to be a proprietary function in others, but the courts in general, and those of this state in particular, are committed to the rule that a municipality engaged in maintaining and operating a waterworks does so in the exercise of a proprietary or private character as distinguished from a governmental character. Flutmus v. City of Newport, 175 Ky. 817, 194 S. W. 1039.

Much oral testimony was introduced by both plaintiff and defendant in this case. Present and past officials of the city were called to the stand to testify as to the needs of the city for additional space for carrying on the business of said city in its governmental capacity. These witnesses likewise testified as to the purpose for which the building is being held by said city at the present time and to which (in their opinions) it would be devoted in the future. None such testimony, however, is competent to establish facts at variance with those shown by the official records of the city. Where a city has spoken through its official records, it may not in a collateral attack dispute the veracity of the records by introducing parol evidence to the contrary.

McQuillen in his work on Municipal Ordinances, Section 128, page 206, says:

"(Municipal) records imperatively required by law, made by the proper officers, are conclusive of facts therein stated, not only upon the corporation but upon all the world as long as they stand as records. Their accuracy can be contradicted or impeached only in proceedings instituted directly for that purpose, and to the end that the records may be corrected."

The minutes of the governing body of the city of Hazard as introduced in evidence disclose the following facts, to wit: The High Street building was purchased by a committee of the general council of the city of Hazard, and was ratified and confirmed by the council on the 7th day of September, 1937. The purchase price was $5,500, $500 of which was paid in cash and the balance payable at the rate of $500 each 6 months thereafter, evidenced by 10 notes for $500 each, bearing interest at 6 per cent per annum. On the 1st day of January, 1938, the city of Hazard changed from the councilmanic to the Commissioner-city manager form of government. The board of commissioners endeavored to sell the property but were unsuccessful and in the middle part of the year 1938 passed a resolution directing that the property be paid for out of the funds of the water department and that the property be considered as the property of the water department of the city of Hazard and that the title be transferred when and if deemed necessary.

On January 16, 1939, the city manager was authorized to borrow $5,000 in behalf of the city water company for the purpose of improving the building and the reconstruction of a new filter at the water plant. On August 15, 1939, a resolution was passed directing that work on the building be discontinued. On the 28th day of December, 1939, 13 days after the levy of the execution herein sought to be avoided, the board of commissioners passed a resolution to the effect that the High Street building was originally purchased and later repaired and remodeled with the view of using same for governmental purposes and that there was dire need of the use of said building to carry on the governmental functions of the city. Said resolution then ordered that the work of reconstruction be resumed at the earliest practical time and the building be completed and placed in position for occupancy by the departments of the city government.

On the 8th day of January, following, a resolution was passed directing that the expense of heating the High Street building be paid out of the water funds.

It will thus be seen from the official records of the city that the building in question became the property of the waterworks of the city in the middle part of the year 1938, to be paid for out of the profits of the waterworks and consequently to be used by the city in the maintenance and operation of same. No official action expressing a contrary purpose was manifested by the city until 2 weeks after the levy of the execution herein, towit, December 28, 1939. On the contrary, every resolution passed from the time the property was acquired by the waterworks until the time of the levy of the execution substantiated the fact that the property is owned by the waterworks, is being paid for out of the profits of the waterworks and consequently is to be used by the city in its proprietary capacity, viz., the operation of the waterworks.

The passage of the resolution of December 28, 1939, 2 weeks after the levy of the execution, was a futile endeavor on the part of the city to clothe the building in question with a character it did not possess and in so far as this proceeding is concerned, is of no force or effect. Even after the passage of said resolution of December 28, 1939, the costs of heating the building were paid out of the water funds as shown by its resolution passed on January 8, 1940, which is additional proof that the resolution of December 28, 1939, was a mere subterfuge.

It follows that the city of Hazard owns and is holding said building in its proprietary capacity and that the property is subject to the execution procured by the defendant Duff and levied by the defendant Begley.

Since the judgment of the trial court is in conformity with this opinion, it is hereby affirmed.