[No. A111591. First Dist., Div. Three. Sept. 28, 2006.]

NORTH BAY CONSTRUCTION, INC., Plaintiff and Appellant, v. CITY OF PETALUMA, Defendant and Respondent.

## COUNSEL

Delphine S. Adams for Plaintiff and Appellant.

Meyers, Nave, Riback, Silver & Wilson, Joseph M. Quinn and Eric W. Danly for Defendant and Respondent.

## OPINION

**POLLAK, J.**—Plaintiff North Bay Construction, Inc. (North Bay), seeks to recover from the City of Petaluma (City) for grading work it performed on City land under a contract with the developer to which the City had leased the property. North Bay seeks to foreclose a mechanic's lien against the property and to obtain judgment against the City on a theory of quantum meruit. The trial court dismissed North Bay's complaint on the grounds that a mechanic's lien cannot be enforced against property owned by a municipality, even if the work was not performed as part of a "public work" project, and that a contractor cannot recover in quantum meruit for improvements to a municipality's property performed under a contract with a third party. We agree with the conclusions of the trial court and shall affirm.

### Factual and Procedural History

North Bay's complaint alleges that the City is the owner of real property commonly known as the Redwood Empire Sportsplex, which was leased to a developer for the purpose of constructing a sports complex.[1] The developer

---

[1] The complaint also alleges causes of action against Mark Hronec and the Redwood Empire Sportsplex, LLC (referred to herein as the developer), but these defendants are not parties to the present appeal. Although the complaint does not otherwise describe the "sports complex,"

contracted with North Bay, a licensed paving contractor, to perform grading work at the property, which North Bay has completed but for which it has not been paid. North Bay recorded a mechanic's lien against the property and served a "Notice of Potential Claim" on the City advising it that, as the owner and lessor of the property, it may be responsible for the reasonable value of the material and labor provided by North Bay. The complaint alleges, among other things, a common count to recover from the City the "reasonable value of work, labor, and services" (third cause of action) and a cause of action to foreclose on the mechanic's lien (fifth cause of action). The City demurred to the complaint on the grounds that a mechanic's lien cannot be enforced against public property and that common counts may not be asserted against public entities. The trial court sustained the demurrer without leave to amend. The City was dismissed from the action and North Bay filed a timely notice of appeal.

## Discussion

1. *Mechanic's Lien*

"A mechanic's lien is a procedural device for obtaining payment of a debt [owed] by a property owner for the performance of labor or the furnishing of materials used in construction." (*Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.* (2002) 102 Cal.App.4th 765, 774, fn. 11 [125 Cal.Rptr.2d 804].) The statute implementing this procedure, Civil Code section 3109 et seq.,[2] is derived from article 14, section 3 of the California Constitution, which provides that "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens." Accordingly, section 3110 provides in relevant part, "Mechanics . . . and all persons and laborers of every class performing labor upon . . . a work of improvement shall have a lien upon the property upon which they have bestowed labor . . . whether done or furnished at the instance of the owner . . . or otherwise." Section 3129 provides that "[e]very work of improvement constructed upon any land . . . with the knowledge of the owner . . . shall be held to have been constructed . . . at the instance of such owner . . . and such interest shall be subject to any lien recorded under this chapter unless such owner . . . shall give a notice of nonresponsibility pursuant to Section 3094."

the City's brief states, without objection or apparent controversy, that the complex "would include softball and soccer fields, volleyball courts, snack bars, batting cages, and a clubhouse."

[2] All further statutory references are to the Civil Code unless otherwise noted.

■ Section 3109, added by the Legislature in 1969, expressly provides that the mechanics' lien law "does not apply to any public work." (Stats. 1969, ch. 1362, § 2, pp. 2752, 2761.) "Public work" is defined as "any work of improvement contracted for by a public entity." (§ 3100.) North Bay argues that since the City did not contract for the performance of any of the work on the sports complex, the project is not a "public work" and section 3109 therefore has no application. Since the work in question was contracted for by the lessee/developer, the argument continues, the mechanic's lien statute applies and, the City as owner having failed to file a notice of nonresponsibility pursuant to section 3094, a lien may be imposed on the property on which the improvements were performed.

■ While there is no dispute that the express exemption for public work provided by section 3109 does not apply, it does not necessarily follow that a mechanic's lien may be impressed on property owned by the City. In 1891, the California Supreme Court held that a mechanic's lien could not be enforced against a schoolhouse owned by a local school district. (*Mayrhofer v. Board of Education* (1891) 89 Cal. 110, 112 [26 P. 646] (*Mayrhofer*).) The court explained that because of principles of sovereign immunity, any right to impress a mechanic's lien on public property must be expressly, not implicitly, provided for by statute. The court rejected the argument that "public buildings are included both in the word 'property,' used in the constitution, and in the phrase 'any building,' used in the code, and therefore it must necessarily follow that mechanics and material-men are, by these provisions, given a right to a lien upon such buildings." (*Ibid.*) The court relied on "the rule of statutory construction, that the state is not bound by general words in a statute, which would operate to trench upon its sovereign rights, injuriously affect its capacity to perform its functions, or establish a right of action against it." (*Ibid.*) Since *Mayrhofer*, the general rule has been broadly stated, often without reference to section 3109, that "liens for labor or supplies on public property are not permitted." (*A. J. Setting Co. v. Trustees of Cal. State University & Colleges* (1981) 119 Cal.App.3d 374, 381 [174 Cal.Rptr. 43]; *Sukut-Coulson, Inc. v. Allied Canon Co.* (1978) 85 Cal.App.3d 648, 654 [149 Cal.Rptr. 711] ["the mechanics lien laws, in general, do not apply to public improvements"].) While most of these cases did involve public work projects, the prohibition is frequently stated as applying to "public *property*," not simply to public work projects. This is consistent with the rule in many other jurisdictions. (E.g., *Kennedy & Co., Inc. v. N. Y. World's Fair 1939, Inc.* (N.Y.App.Div. 1940) 260 A.D. 386, 388 [22 N.Y.S.2d 901, 904] ["lien cannot attach to the City's interest in the real estate"]; *National Fire Proofing Co. v. Town of Huntington* (1909) 81 Conn. 632 [71 A. 911, 912] ["public buildings" not subject to lien]; see also 51 A.L.R.3d 657, § 3[a] [listing cases in

which courts have applied principles of sovereign immunity "in determining that municipal property could not be the subject of a mechanic's lien"]; 3 Bruner & O'Connor, Construction Law (2006) § 8:136 ["As a general rule, mechanics' liens do not attach to public property"].)

■ The holding in *Mayrhofer* remains good law. There is no right to impose a lien on property owned by a public entity unless such a right has been expressly conferred by statute. (*Mayrhofer, supra*, 89 Cal. at p. 113 ["One cannot sue the state, unless expressly authorized by statute, and this principle is embodied in our constitution. General statutes creating new remedies for individuals have never been held to authorize such suits"].) This principle has been reconfirmed very recently by our Supreme Court: "A traditional rule of statutory construction is that, absent express words to the contrary, governmental agencies are not included within the general words of a statute." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1192 [48 Cal.Rptr.3d 108 141 P.3d 225] (*Wells*); see *State ex rel. Harris v. PricewaterhouseCoopers* (2006) 39 Cal.4th 1220 [48 Cal.Rptr.3d 144, 141 P3d 256].)[3]

■ While sovereign immunity against being sued has been waived by Government Code section 945 (a "public entity may sue and be sued"), Government Code section 944 provides that "[n]othing in this part imposes liability upon a public entity unless such liability otherwise exists." No statute imposes liability on a public entity for debts incurred by a lessee for improving property owned by and leased from the public entity. ■ Nor can section 3109 be construed to implicitly authorize a mechanic's lien against public property for performing work that is not a "public work." To the contrary, the legislation adopting section 3109 provided expressly that it was the intent of the Legislature that "[t]his act shall not be construed to constitute a change in, but shall be construed as declaratory of, the preexisting law." (Stats. 1969, ch. 1362, § 10, p. 2783.)

---

[3] *Wells* took note of "a more recent exception to this principle, i.e., that government agencies are excluded from the operation of general statutory provisions 'only if their inclusion would result in an infringement upon sovereign governmental powers.' " (*Wells, supra*, 39 Cal.4th at p. 1192.) However, after observing that "the premise that public entities are statutory 'persons' unless their sovereign powers would be infringed is simply a maxim of statutory construction," the court held that "in light of the stringent revenue, appropriations, and budget restraints under which all California governmental entities operate, exposing them to the draconian liabilities of the [California False Claims Act (Gov. Code, § 12650 et seq.)] would significantly impede their fiscal ability to carry out their core public missions." (*Wells, supra*, at p. 1193.) While the consequences of imposing a lien on governmentally owned property may or may not be considered as severe as imposing liability for penalties under the California False Claims Act, the potential diversion of public funds from core governmental functions were such liens to be permitted is the same. (See pp. 562–563, *post.*)

North Bay argues that a distinction must be drawn between property owned by a municipality that is used for governmental as opposed to proprietary purposes. It contends that property held in a proprietary capacity—as it asserts is the case here[4]—is subject to a lien as is any other privately held property. Although there is no California authority directly on point, some other jurisdictions have agreed that the purpose for which governmentally owned property is used determines whether the property is subject to a mechanic's lien. (*Comstock & Davis, Inc. v. City of Eden Prairie* (Minn.Ct.App. 1997) 557 N.W.2d 213, 216; *Mayor & Council v. Recony Sales & Engineering Corp.* (1962) 55 Del. 129 [185 A.2d 68, 70]; *American Seating Company v. City of Philadelphia* (1969) 434 Pa. 370 [256 A.2d 599, 600–601] (*American Seating*).)[5]

In *American Seating, supra,* 256 A.2d at pages 600–601, the court held that a municipality's "quasi-private" proprietary interest in a privately built sports complex was subject to a mechanic's lien. The Pennsylvania statute at issue in that case provided, much like section 3109, that " 'No lien shall be allowed for labor or materials furnished for a purely public purpose.' " (*American*

---

[4] Contrariwise, the City suggests that although the property was to be developed by a private entity, the sportsplex retained a general public purpose and bore "more similarity to a public park or playground than a professional sports arena . . . ." In view of the decision we reach rejecting the significance of such a distinction, we need not determine the proper characterization of the proposed use of the property. However, the elusive, if not illusory, nature of such a distinction and the uncertainty and inevitable litigation that recognizing such a distinction would generate are additional factors weighing against the adoption of such a distinction. (See *post,* at pp. 561–562.) (See, e.g., *J.S. Sweet Co. v. White County Bridge* (Ind.Ct.App. 1999) 714 N.E.2d 219, 223 [bridge located on private property but operated by county bridge commission "does not fall neatly into either the public or the private category"]; *Comstock & Davis, Inc. v. City of Eden Prairie, supra,* 557 N.W.2d at pp. 214–216 [shopping center built on publicly owned land by private developer as part of city's economic redevelopment project was not public in nature]; 3 Bruner & O'Connor, Construction Law, *supra,* § 8.136 ["Determining whether property is public can sometimes be a challenge"].)

[5] North Bay suggests that *Progress Glass Co. v. American Ins. Co.* (1980) 100 Cal.App.3d 720 [161 Cal.Rptr. 243] supports its contention, but it does not. In that case, the court held that a provision in an unrecorded statutory payment bond purporting to impose a more restrictive limitations period than authorized by statute was invalid. The court held that the bond was a statutory bond, subject to the longer limitations period provided by statute, because it was a "payment bond" given for a "private work." (*Id.* at p. 726.) "The construction project was agreed upon by the County in its lease of the motel site, and the County is a 'public entity' within the meaning of section 3099. . . . However, it was not a party to the construction contract executed by the owners of the project and Carlsen. The project was therefore not a 'public work,' within the meaning of section 3100, because it was not 'contracted for by a public entity' within the same meaning. . . . It being a 'private work' by elimination, defendant's bond was a 'payment bond' for a 'private work' for purposes of section 3239 and the other provisions of chapter 6." (*Progress Glass Co. v. American Ins. Co., supra,* at p. 727.) The plaintiff contractor in that case was not seeking to enforce a claim against the county and there is nothing in the court's analysis that supports North Bay's contention that a contractor can foreclose a mechanic's lien against public property.

*Seating, supra,* at p. 600.) The court reasoned that this language did not preclude the possibility of imposing a mechanic's lien on public property, and that the court "must inquire and decide whether, apart from the Act, the case law of Pennsylvania precludes mechanics' lien claims against municipalities." (*Id.* at p. 601.) The court concluded, "Although our research has disclosed no case explicitly holding that in every instance liens against municipal properties are void, still the statement seems correct as a general proposition of Pennsylvania law. However, it seems to us that a meaningful ground for distinction rests in the use to which the municipality puts the property. Where, as here, the municipality acts as an absent landlord, entrusting the management and control of its premises to its tenant; and where the building was constructed and paid for by the tenant; and further, where the municipality in owning the building, discharges a function not governmental in nature, but rather proprietary and quasi-private; then an exception to the general rule that municipal property is exempt from mechanics' liens seems proper. Since an execution upon the lien would not disrupt an essential public service or function, no reason appears for striking the lien down." (*Ibid.*) In reaching this conclusion, the Pennsylvania court relied on cases upholding execution upon a judgment lien against public property held in a proprietary rather than governmental capacity. (*American Seating, supra,* 256 A.2d at p. 601, fn. 2, citing *Kerr v. City of New Orleans* (5th Cir. 1903) 126 F. 920; *City of Bradenton v. Fusillo* (1938) 134 Fla. 759 [184 So. 234]; *City of Hazard v. Duff* (1941) 287 Ky. 427 [154 S.W.2d 28].)

Courts in other jurisdictions have come to a contrary conclusion, refusing to permit the enforcement of liens against any public property. (E.g., *Spring Sheet Metal & Roofing v. Comida* (N.Y.App.Div. 1996) 226 A.D.2d 1064, 1065 [641 N.Y.S.2d 955, 957] [property owned by a public body but leased to a private hotel operator for use as a private hotel]; *GME Consultants v. Oak Grove Development* (Minn.Ct.App. 1994) 515 N.W.2d 74, 75–76 [property leased to private party but held for potential future use by school district].) Moreover, even in *American Seating,* while the Pennsylvania court held that the mechanic's lien could be filed, the court refused to permit it to be enforced as long as the municipality owned the property. The lien that was recognized reflected only an inchoate interest that could be foreclosed only if and when the property was transferred to a nongovernmental entity. (*Id.* at pp. 603–604.)

California courts formerly drew a distinction between property held in a proprietary as distinguished from a governmental capacity for the purpose of permitting execution on a judgment lien. (*Marin Water etc. Co. v. Sausalito* (1920) 49 Cal.App. 78, 83 [193 P. 294] ["property which [a municipality] holds merely as a proprietor, devoting it to no use of a public character, such as lands acquired or held for other than public purposes and not in trust for public use, are subject to execution unless some statutory or constitutional

provision forbids it"]; *C. J. Kubach Co. v. City of Long Beach* (1935) 8 Cal.App.2d 567 [48 P.2d 181].) This distinction, however, has since been abolished by the Legislature.

The rule permitting execution of a judgment lien against government property held in a proprietary capacity developed from the common law rule that tort claims could be asserted against a public entity acting in a proprietary rather than a governmental capacity. (*Marin Water etc. Co. v. Sausalito, supra,* 49 Cal.App. at p. 80; *City of Hazard v. Duff, supra,* 154 S.W.2d at p. 29 ["The municipality is not liable for torts committed in the exercise of its governmental functions; neither is its property used in that capacity subject to execution. But it is liable for its torts committed in the exercise of its private capacity; and its property used in its private capacity is subject to execution"].) The common law rule, however, has been superceded by the California Tort Claims Act. (Gov. Code, §§ 810–996.6.) Today, Government Code section 815.2, subdivision (a) provides that "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." No distinction with regard to liability is drawn between the public and proprietary functions of the public entity. (*Maxon Industries, Inc. v. State Compensation Ins. Fund* (1993) 16 Cal.App.4th 1387, 1394 [20 Cal.Rptr.2d 730] ["the significance of a distinction between proprietary and governmental activities with respect to tort liability was essentially abrogated in *Muskopf v. Corning Hospital Dist.* [(1961)] 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457] and by subsequent enactment of the California Tort Claims Act"].)

More directly on point, the Legislature has also enacted a separate comprehensive scheme prescribing the manner in which a judgment against a local public entity may be satisfied, and it does not include execution on public property. (*Barkley v. City of Blue Lake* (1993) 18 Cal.App.4th 1745, 1750 [23 Cal.Rptr.2d 315] [enforcement of judgment against local public entity governed by Gov. Code, § 970 et seq.].) Government Code section 970.1, subdivision (b) now provides, "A judgment, whether or not final, is not enforceable under [the provisions of the Code of Civil Procedure commencing with section 680.010 governing the enforcement of civil judgments] but is enforceable under this article after it becomes final." The corresponding provisions of the Code of Civil Procedure reiterate that "A money judgment against a public entity is not enforceable under this division if the money judgment is subject to [the provisions of the Government Code commencing with sections 965 and section 970 concerning the enforcement of judgments against the state and against local public entities]." (Code Civ. Proc., § 695.050.) The Law Revision Commission comment to Government Code section 970.1, which was amended in 1980, notes that "[u]nder prior law,

property of a local public entity was not subject to execution under the Code of Civil Procedure if the property was used or held for use for a public purpose. On the other hand, property held by a local public entity merely as a proprietor, devoted to no use of a public character, such as land acquired or held for other than public purposes and not held in trust for public use, was subject to execution unless some statutory or constitutional provision forbade it." (Cal. Law Revision Com. com., 32A pt. 1 West's Ann. Gov. Code (1995 ed.) foll. § 970.1, p. 111.) "Subdivision (b) [of Government Code section 970.1]," the comment explains, "changes prior law to provide that execution and other remedies under the Code of Civil Procedure for enforcement of money judgments do not apply to enforcement of a money judgment against a local public entity. . . ." (*Ibid.*)[6]

Accordingly, while execution of a judgment lien against private property is authorized by Code of Civil Procedure sections 697.010 through 697.060, no such procedure is now authorized in the relevant sections of the Government Code. Rather, the Government Code provides that "[a] writ of mandate is an appropriate remedy to compel a local public entity to perform any act required by this article" (*id.*, § 970.2), and "imposes a duty upon local public entities to pay tort judgments in the manner provided in this article and gives the judgment creditor the right to obtain a writ of mandate to enforce this duty. Depending upon the financial condition of the public entity, it can comply with the duty to pay a tort judgment by: (1) paying the judgment in the fiscal year in which it becomes final; (2) paying the judgment in the next fiscal year; (3) paying the judgment in not more than 10 annual installments; or (4) paying the judgment with the proceeds of a bond issue as authorized by Article 2 (commencing with Section 975) of this chapter." (Cal. Law Revision Com. com., 32A pt. 1 West's Ann. Gov. Code, *supra*, foll. § 970.2, at p. 112.) The Law Revision Commission explains further, in its Recommendations Relating to Enforcement of Claims and Judgments Against Public Entities, that "The procedure recommended above for enforcing money judgments against public entities takes into account their special nature. Making clear that execution is not available to enforce a judgment against a public entity will protect against the possibility of seizure and sale of public property to satisfy a judgment. Litigation to determine the status of public property will be avoided." (Recommendation: Enforcement of Claims and Judgments Against Public Entities (Nov. 1979) 15 Cal. Law Revision Com. Rep. (1980) p. 1266.)

---

[6] The Law Revision Commission comments to Government Code section 970 explain that the section was amended "to expand the definition of 'judgment' to include all money judgments. This change makes this article a comprehensive statute that applies to money judgments generally without limitation." (Cal. Law Revision Com. com., 32A pt. 1 West's Ann. Gov. Code, *supra*, foll. § 970, at p. 110.)

The legislative elimination of the right to execute upon governmentally owned property under any circumstances reflects a long-perceived recognition of the illusive nature of the distinction between property held in a governmental as opposed to a proprietary capacity. In *Mayrhofer* itself, the court explained that "[t]he government was created and shaped by the constitution. It is not an end in itself, but a mere instrumentality for public service. Its powers and functions exist only for the people. One of its functions is to enact laws for the government of the *inhabitants within its limits*, thereby affording them protection and advancing their general welfare. The property it holds is simply to enable it to perform the service required of it. It is as much devoted to public use as are the streets and highways, though in a different way; and it is generally held by a different tenure." (*Mayrhofer, supra,* 89 Cal. at p. 113.) In *Davoust v. City of Alameda* (1906) 149 Cal. 69, 75–76 [84 P. 760], the concurring opinion of Justice Shaw observed: "It is evident . . . that the division of municipal functions into two classes, one public and governmental, the other private and corporate, is without any real foundation, and is made solely from the supposed necessity of doing so in order to allow a suit to be maintained for such injuries. In its public functions a municipality was said to represent the sovereign power, and as such to be exempt from private action. Hence, with respect to the class of powers here involved, it was considered necessary to designate them as private in character, in order to uphold a suit to recover for these injuries. The only reason given for classifying the power to administer public utilities as private and corporate, is that private persons and corporations frequently engage in such enterprises; that they are carried on by the city for its own profit; and, in a few cases, that the municipality has contracted with the sovereign power to do such things, and is therefore acting in a private capacity. None of these reasons is of any force." In his opinion, the "distinction which is wholly fictitious [and] will produce, as such arbitrary distinctions are apt to produce, embarrassing consequences, if recognized as real and applied to other questions." (*Id.* at p. 79.)

■ The explicit legislative action rendering all publicly owned property immune from execution confirms the continuing vitality of the approach adopted in *Mayrhofer*. (See also *Wells, supra,* 39 Cal.4th 1164; *State ex rel. Harris v. PricewaterhouseCoopers, supra,* 39 Cal.4th 1220.) While the Government Code provisions for enforcing judgments against a public entity do not apply directly to the Civil Code provisions on mechanic's liens, the interest in preventing the enforcement of individual rights from interfering, directly or indirectly, with the operations of the government are the same. In the present case, there is an undeniable public interest in public retention of the property in question, whether to ensure that the property is put to a use compatible with the needs and desires of the City's residents or to derive income from the property to support other public functions. Since no

legislation expressly authorizes the imposition of a mechanic's lien on this or other publicly owned property, North Bay may not pursue its claim to compensation by proceeding under the mechanic's lien law.

North Bay was not without a means of protecting its right to compensation. To enforce payment, a party contracting with a private lessee to perform work of improvement on publicly owned property may utilize the bonded stop notice procedure under sections 3159 and 3162, as can its subcontractors. These provisions enable the contractor to require a construction lender to withhold funds from the construction loan account to pay for uncompensated work performed on the project.[7] (*Nibbi Brothers, Inc. v. Home Federal Sav. & Loan Assn.* (1988) 205 Cal.App.3d 1415, 1419 [253 Cal.Rptr. 289]; 3 Witkin, Cal. Proc. (4th ed. 1996) Actions, § 213, p. 280.) Similarly, the contractor may insist that a payment bond be secured for work performed under its contract. (§ 3096.) But the contractor may not impose a lien on the underlying public property. Hence, the trial court properly sustained the City's demurrer to North Bay's fifth cause of action.

## 2. *Common Count*

■ North Bay's third cause of action seeks to recover the value of its services based on a theory of quantum meruit. It has long been true, however, that a quasi-contract theory cannot be asserted against a municipality in a public works context. (*Amelco Electric v. City of Thousand Oaks* (2002) 27 Cal.4th 228, 239 [115 Cal.Rptr.2d 900, 38 P.3d 1120]; *Miller v. McKinnon* (1942) 20 Cal.2d 83, 88 [124 P.2d 34].) North Bay argues that this rule is not applicable here because, once again, "[t]he protection of the public is not at issue in the context of this private project."

In *Miller v. McKinnon, supra*, 20 Cal.2d at page 88, the Supreme Court stated, " 'Certain general principles have become well established with respect to municipal contracts, and a brief statement of these principles will serve to narrow the field of our inquiry here. The most important one is that contracts wholly beyond the powers of a municipality are void. They cannot be ratified; no estoppel to deny their validity can be invoked against the municipality; and ordinarily no recovery in quasi contract can be had for work performed under them. It is also settled that the mode of contracting, as prescribed by the municipal charter, is the measure of the power to contract;

---

[7] North Bay explains that "the developer repeatedly misrepresented that financing on the project was imminent and, at a later point, misrepresented that financing was actually in place." These allegations are not contained in the complaint, but in all events they tend to demonstrate only that North Bay may have acted imprudently in failing to confirm the existence of sufficient funding before commencing or agreeing to commence work on the project.

and a contract made in disregard of the prescribed mode is unenforceable.' [Citations.] And even though the person with whom the contract was made has supplied labor and materials in the performance of the contract and the public agency has received the benefits thereof, he has no right of action to recover in quantum meruit the reasonable value thereof. [Citations.] The competitive bidding requirement is founded upon a salutary public policy declared by the legislature to protect the taxpayers from fraud, corruption, and carelessness on the part of public officials and the waste and dissipation of public funds." (Italics omitted.) North Bay offers no explanation for its assertion that this public policy is not implicated in the present case. But if a contractor cannot recover in quantum meruit against a city that has contracted for the performance of work without complying with competitive bidding requirements, there is hardly a basis for recovery in quantum meruit for work performed under a contract to which the city was not even a party. Certainly the risk of fraud, corruption or waste endangering the public treasury is as great, if not significantly greater, in this situation than where the municipality has at least agreed to pay for the work in question.

As to the understandable concern to avoid undue hardship, we quote the advice of the Supreme Court in *Miller v. McKinnon, supra*, 20 Cal.2d at pages 88–89: " 'It is urged in this case, as it invariably is in all such cases, that the application of this rule works a great hardship if the school district may retain the benefit of the work of the contractor and be relieved of liability to compensate him therefor. . . . In fact, the plea of hardship urged here was answered in the *Zottman* case [*Zottman v. City and County of San Francisco* (1862) 20 Cal. 96] by language as pertinent now as it was then, where the court said: "It may sometimes seem a hardship upon a contractor that all compensation for work done, etc., should be denied him; but it should be remembered that he, no less than the officers of the corporation, when he deals in a matter expressly provided for in the charter, is bound to see to it that the charter is complied with. If he neglect this, or choose to take the hazard, he is a mere volunteer, and suffers only what he ought to have anticipated. . . ." ' Persons dealing with the public agency are presumed to know the law with respect to the requirement of competitive bidding and act at their peril." Likewise, North Bay must be presumed to have known the law. As indicated above, it could have protected itself from the contractor's default by confirming the existence and sufficiency of a construction loan and following the statutory stop notice procedures, or by obtaining a payment bond or other security to ensure payment. Having failed to do so, North Bay cannot shift the burden of its loss to the City in disregard of a well established public policy to the contrary.

## Disposition

The judgment is affirmed.

McGuiness, P. J., and Parrilli, J., concurred.